**Application of Harry TANCZYN.**
**Patent Appeal No. 7380.**

United States Court of Customs
and Patent Appeals.
July 8, 1965.

John Howard Joynt, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

Harry Tanczyn appeals from a decision of the Board of Appeals affirming the rejection of all claims in appellant's application.[1] Appellant's invention relates

---

1. Serial No. 854,226, filed November 20, 1959, for "Stainless Steel and Method."

to a stainless steel of which claim 1 reproduced below is illustrative.

A chromium-nickel-aluminum stainless steel susceptible to precipitation-hardening by double heat-treatment from a soft, workable austenitic condition to give great strength in combination with good ductility, said steel consisting essentially of 9.00% to 20.00% chromium, 2.50% to 8.00% nickel, .70% to 2.50% aluminum, 1% to 5% molybdenum, with the sum of the chromium and molybdenum contents 14% to 21%, .10% to .40% nitrogen, carbon .12% maximum, manganese 8.00% maximum, with manganese inversely proportioned with respect to the nickel content, silicon 2.00% maximum, phosphorus .050% maximum, sulphur .050% maximum, and remainder substantially all iron.

Appellant's steel differs from the prior art in that it contains both nitrogen and molybdenum. The references relied upon by the examiner are:

| | | | |
|---|---|---|---|
| Goller | 2,505,763 | May 2, 1950 |
| Walton | 2,892,702 | June 30, 1959 |

Goller discloses a stainless steel having the same composition as appellant's except that it contains no nitrogen. Walton discloses a stainless steel which differs from appellant's steel only in the fact that it does not contain molybdenum. The examiner's rejection was that a molybdenum and nitrogen containing steel would be obvious in view of Goller and Walton.

Appellant filed an affidavit under Rule 131 in an attempt to antedate the Walton reference. The board held that the affidavit was not effective to antedate the reference because it did not show "completion of the claimed invention or any part thereof * * *." It is clear that if the board erred in this holding the decision must be reversed since a rejection on Goller alone cannot be sustained. Thus, we shall first consider the adequacy of the affidavit.

*The Rule 131 Affidavit*

The affidavit establishes that prior to January 4, 1955, the filing date of the Walton patent, appellant made a nitrogen containing stainless steel having the same composition as that disclosed by Walton. The affidavit does not disclose completion of the *claimed* invention prior to the date when both Goller and Walton were available.

The examiner, citing Ex parte Blair, 129 USPQ 424 (P.O.B.A.1957), held that the affidavit was directed to an invention which differs in kind from the claimed invention and therefore that no weight could be attached to the affidavit. It is the appellant's position that Blair "merely harked back to the views of the Board, as reversed by this court" in In re Stempel, 241 F.2d 755, 44 CCPA 820.

When a rejection under 35 U.S.C. § 102(a) is involved, we have held that "under the law all the applicant can be required to show is priority with respect to so much of the claimed invention as the reference happens to show." In re Stempel, 241 F.2d at 759, 44 CCPA at 826. In Stempel the claims under appeal were drawn to *chemical compounds*. Both genus and species claims were present. One of the claimed species was disclosed in a U. S. patent. The reference was antedated by affidavits under Rule 131 which established that appellant had made the species disclosed in the reference before the effective date of the reference. The Board of Appeals held that establishing priority to a common species was not sufficient to obtain allowance of a generic claim. This court reversed the board, holding that a Rule 131 affidavit need not show the invention *"defined in the claim the applicant is asking for * * *."* 214 F.2d at 759, 44 CCPA at 825.

In Stempel the applicant successfully overcame the reference as to both generic and species claims by showing priority only as to the species shown by the reference. It was, however, a species *of the claimed generic invention*. The species of the reference and affidavit was sufficient to anticipate the generic claims of

the application. Thus, in addition to establishing priority as to the species of the reference, the Stempel affidavit also disclosed completion of the invention, although admittedly not in the broad generic form. The reduction to practice shown was of a species of the invention within the generic claims.

A different situation may prevail when the rejection is based upon 35 U.S.C. § 103. In such a case the purpose of an affidavit is to establish that the claimed invention was made by the applicant before the effective date of a reference relied upon to show that the invention was obvious. By so doing, the applicant may prove, by eliminating a reference, that at the time the invention was made "the subject matter as a whole would [not] have been obvious * * *."

In Ex parte Blair, supra, a rejection on a combination of two references under 35 U.S.C. § 103 was involved. By a Rule 131 affidavit, the applicant antedated one of the references. Although the affidavit did not show completion of the claimed invention, it did show completion of that "part" of the claimed invention which the reference showed. The appellant argued that such a showing was sufficient under Stempel. The board held the affidavit ineffective, stating:

It seems to us that the mere fact that an inventor may have invented the combination, A, B, and C, for example, before a patentee does not in itself prove that he has also invented the combination, A, B, C, and D at the same time (D representing the extra pair or pairs of fingers over the ten pairs shown by Schon).

In our opinion, the term "invention" in Rule 131 is used in the same sense as in the Patent Statute to mean that which is *claimed* as new and patentably useful, 35 U.S.C. Sections 101, 102, 103, and 112. Section 112 requires that:

"The specification shall conclude with one or more claims

particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

and *it is this claimed "invention" which we think was intended in Rule 131.* It does not appear to us logical that one should be permitted to dissect the invention, in this instance the claimed *combination, into several parts* and then say because he has invented *one* such *part* prior to a *reference disclosing that part* that he has also invented the entire combination prior to that reference, even though other references combined therewith to meet "the invention" bear an earlier date. [Emphasis added.]

We are in general agreement with the reasoning of the board although not necessarily with its precise language. It must be remembered that in Stempel the dispute was whether it was completion of the *claimed* invention—specifically, the genus of the generic claims—that had to be established prior to the date of the reference, and we held that it did not where the reference did not disclose that invention but only a species within it.

The mere fact that an applicant has previously produced that which is disclosed by a reference, however, may have no bearing on the problem of whether he made his invention or a patentable portion of it before the date of a reference.

In retrospect and in the light of the facts now before us, it seems necessary to comment on and to restrict somewhat certain broad language in Stempel, particularly the two following statements:

We are convinced that under the law all the applicant can be required to show is priority with respect to so much of the claimed invention as the reference happens to show. When he has done that he has disposed of the reference.

* * * * * *

In the case of a reference, it is fundamental that it is valid only for

what it discloses and if the applicant establishes priority with respect to that disclosure, and there is no statutory bar, it is of no effect at all.

Those statements were entirely valid, we still think, *as applied to the facts in Stempel* where the reference showed a species of the generic invention being claimed in the appealed claims. As frequently happens, however, the statements are broad enough to encompass the very different situation we now have before us and which was present in Blair. There is a difficulty in discussing it because of the ambiguity of the word "part" in speaking of "part of an invention." It can mean such a "part" as the species which Stempel invented, which was part of his claimed genus. It can mean an element or subcombination of elements forming part of a larger combination of elements making up a machine such as the bowling pin spotting device of Blair. Or it can mean an alloying ingredient or an alloy containing all but one of the essential ingredients, as here. In one sense, a stainless steel alloy containing nitrogen but no molybdenum is a part, even a large part, of appellants' alloy; in a more accurate sense, however, it is not a "part" *of his invention* at all because his invention does not exist at all until there is an alloy containing *both* nitrogen and molybdenum.

■ We never intended by the language used in Stempel to authorize the overcoming of references by affidavits showing that the applicant had invented, prior to the reference date, a part, some parts, or even a combination of parts, used to create an embodiment of his claimed invention, where the part or parts are not within the scope of the claims being sought, as the species of Stempel shown by the reference was within his generic claims.

In our view, appellant was never in possession of any "part" of his claimed

invention until he was in possession of the stainless steel alloy combination containing both nitrogen and molybdenum. Using the term "part" in that same sense, neither reference shows "part" of his invention.

For these reasons we are in general agreement with the board's disposition of the issue and with its statement that:

The instant case does not involve a genus-species relationship. It is abundantly clear from appellant's specification and claims that his invention is in the combined addition of molybdenum and nitrogen to a hardenable chromium-nickel aluminum stainless steel of low carbon content which is not disclosed in the affidavit.

■ While this succinct statement of the board's position appears correct, it might be read to imply that not only must the affidavit show everything the reference shows but also that the *entire* claimed invention must be shown in *all cases* except the genus-species situation. We will not now sanction such a broad rule. It is contrary to Stempel. The primary consideration is whether, in addition to showing what the reference shows, the affidavit also establishes possession of either the *whole* invention claimed or something falling *within* the claim, in the sense that the claim as a whole reads on it.

■■ It is not sufficient to show in a Rule 131 affidavit that an invention wholly outside of that being claimed was made prior to the reference date. Such fact is irrelevant. We therefore hold the Rule 131 affidavit herein to be ineffective to overcome the Walton reference [2] and turn to the question of obviousness, taking that reference into consideration.

*Obviousness*

We must now consider whether appellant's claimed invention is obvious within the meaning of 35 U.S.C. § 103.

---

2. See Pearlman, "Plea for a Realistic Approach to Rule 131 Practice," 43 JPOS 844 (1961), which we have considered and also the Drake commentary thereon at 44 JPOS 212, to which Pearlman replied at 44 JPOS 424.

Both references disclose chromium-nickel stainless steel. Goller discloses that the stainless steel may contain

> * * * anywhere from about 0.02% to 0.12% carbon, aluminum from about 0.50% to 2.50%, from incidental amounts up to about 8.0% manganese, from incidental amounts up to approximately 2.0% silicon, with or without molybdenum ranging up to about 3.0% illustratively to enhance corrosion resistance of the steel, and the remainder substantially all iron. * * *

The Walton stainless steel contains from 0.12% to 0.18% nitrogen to "prevent hardening following solution annealing and render the same uniformly responsive to transforming and precipitation hardening treatments."

The board held that appellant's claimed invention was obvious, stating:

> Goller discloses a hardenable chromium-nickel-aluminum stainless steel in which a portion of the chromium content may be replaced with molybdenum to enhance its corrosion resistance. In our view it would be obvious to a person of ordinary skill in the art to replace a portion of the chromium in the similar stainless steel alloy of Walton et al. for the purpose described by Goller. Conversely, Walton et al. disclose that the addition of nitrogen to a hardenable chromium-nickel aluminum stainless steel will prevent undesirable hardening following solution annealing and it appears to us that the addition of nitrogen to the similar alloy of Goller for the same purpose would also be obvious.

Appellant points out that his invention is not a chromium-nickel stainless steel having outstanding corrosion resistance but rather is a stainless steel which possesses a combination of strength and ductility. The disclosed properties of appellant's steel and the reference steels are as follows:

| Property | Appellant | Walton | Goller |
|---|---|---|---|
| Tensile strength | 200,000 psi | 165,000 psi | 214,000 psi |
| Elongation | 16% | 8% | 6% |
| Reduction in Area | 54% | —— | 21% |

Appellant argues that a steel having these properties is not obvious from the cited references. The board did not answer this contention directly but rather found fault with the comparison as follows:

> We are not impressed with this comparison because there is no direct basis for comparing appellant's steel with those of the references. The heat treatment employed by Goller is different from the heat treatment used in hardening the steels of appellant's Table II. Walton et al. do not disclose the specific heat treatment employed in obtaining the values given. * * *

The appellant rebuts this criticism as follows:

There is nothing in either of the reference citations, or indeed in appellant's disclosure, pointing to any criticality in the heat treatments employed; they all use the combination of solution treatment, preliminary hardening treatment, and final precipitation-hardening treatment wherein a *range* of treating temperatures and a range of time of treatment are acceptable. In Goller the solution annealing is conducted at 1800° to 2000° F., the preliminary hardening at 1200° to 1600° F., preferably 1400° F., and the final hardening at 750° to 1000° F. * *; in Walton et al. these three treatments are respectively conducted at 1800° to 2000° F., 1300° to 1500° F.

and 700° to 1100° F. * * *; and in appellant's disclosure the three are conducted at 1800° to 2100° F., 1400° F., and 750° to 1100° F., respectively * * *.

We agree with appellant that the board has presented no convincing reason why the alloys cannot be compared. Although differences in heat treatment do exist, there is nothing before us to suggest that these slight differences would affect both strength and ductility.

The solicitor treats the improved properties in a somewhat different manner, stating:

> Certainly, the references show that it is known that steels containing either molybdenum or nitrogen have good elongation, and appellant has not shown that the improved elongation of his steel is anything other than the expected additive effects of molybdenum and nitrogen. * * *

We are at a loss to know where the references indicate that the additive effect of molybdenum and nitrogen is improved elongation. We are of the view that the combination of strength and ductility would be unexpected from the cited prior art.

The solicitor further argues that even if the elongation is unexpected, the claimed alloy is obvious because it is obvious to make an alloy containing both nitrogen and molybdenum for their desired property. In this regard we note in reading the references cited by the Patent Office that the formulation of a suitable alloy cannot be done merely by adding one element characterized as a strength additive or another as an elongation additive. For example, Goller notes that aluminum has been recognized as a deoxidizing material. However, aluminum was considered to impair hardenability but in the Goller composition aluminum aided hardening. Two columns in the Goller patent describe various additives that may be included and the delicate balance that must be maintained between these additives. Walton teaches that the response of various alloys to aging treat-

ments varies widely for reasons unknown. In view of this reported difficulty in balancing the properties and compositions of alloys, it appears that the solicitor's approach is unrealistic.

In the absence of either a suggestion in the cited art that nitrogen and molybdenum should be combined in one alloy or of an alloy having properties similar to appellant's, we hold that the claimed composition is unobvious within the meaning of 35 U.S.C. § 103.

The decision of the board is reversed. Reversed.