56 CCPA

**Application of Thomas F. FACIUS.**

**Patent Appeal No. 8238.**

United States Court of Customs
and Patent Appeals.

April 10, 1969.

Davidson C. Miller, John F. Wither-
spoon, Stevens, Davis, Miller & Mosher,
Washington, D. C., for appellant.

**1398**

Joseph Schimmel, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

BALDWIN, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the examiner's rejection of claims 1–4, all of the claims in appellant's application,[1] "as being unpatentable over the disclosure in Engalitcheff[2] in view of the disclosure in Dargavel[3] under 35 U.S.C. § 103."

## THE INVENTION

The invention "relates to evaporative heat exchangers and in particular to improved apparatus for the distribution of water over a heat exchange surface." The specification states:

A water distribution system involving troughs spaced apart so that air could flow between them is disclosed in * * * [Engalitcheff]. This invention involves an improvement over the disclosure of that patent.

The invention is reflected in representative claim 1, subdivided herein with bracketed reference numerals added, when considered with reference to appellant's Figures 3 and 4 below:

1. A system for maintaining an even level of water in a series of troughs [11], each having notched side walls and being spaced apart in the same plane that comprises

an elongated chamber [23],

an elongated reservoir [25],

a common wall [24] between said chamber and reservoir and defining holes [28] at spaced intervals therealong,

the wall [27] of said reservoir opposite said common wall defining a plurality of outlet parts [29]. each communicating directly with an end of one of said troughs,

said ports generally conforming to the interior cross sectional shape of the trough served.

1. Serial No. 425,783, filed January 15, 1965, for "Water Supply System."

2. U.S. Patent 3,146,609, issued September 1, 1964, on an applicaton filed April 27, 1964.

3. U.S. Patent 1,676,943, issued July 10, 1928.

Fig. 3.

Fig. 4.

Additional structural features are recited in claims 2–4, but it will be apparent that we need not consider them.

Water issuing from a conduit 16 enters chamber 23 near the center thereof, flows through holes 28 in wall 24, and establishes a stable liquid level in reservoir 25. Reservoir 25 drains through wall 27 via ports 29 into the respective troughs 11 which spill water through notches 13 onto a heat exchange surface.

Appellant's application is assigned to Baltimore Aircoil Company, Inc.

## THE REFERENCES

Engalitcheff, which *issued* prior to appellant's filing date, also is assigned to Baltimore Aircoil Company, Inc., and "relates to evaporative heat exchangers and in particular to improved apparatus for the distribution of water over a heat exchange surface." The specification states that:

> there has been developed a system of troughs which can be filled to a predetermined level and which will spill water through notches * * *. Such * * * is disclosed in copending application S.N. 240,199 * * *. However, the apparatus of that patent application requires an overhead water supply to the troughs which * * * prevent[s] the flow of air countercurrent to the water. * * *

> It is an object of the present invention to improve upon the system of application S.N. 240,199 by providing a trough water distribution system which * * * permit[s] the water and air to flow in countercurrent relationship * * *.

Fig.2

Fig.3

Water Level in Distribution Box

Water Level in Trough

Fig.4

As illustrated in Figures 2–4 above, Engalitcheff discloses a water distribution system comprising parallel troughs 11 with notched side walls and an elongated water distribution box 21 at one end of the troughs. The water distribution box has an inlet conduit 15 and a series of orifices 22 for evenly distributing and metering the proper flow of water into each trough. A horizontal baffle 23 is provided in each trough; and the baffle has spaced orifices 24 to enable even water distribution in the upper part of the trough. Engalitcheff states that:

> The feeding of water from the ends of the troughs 11 by the system of the present invention results in a very steady head of water in each trough throughout the length thereof even when that length is quite substantial. * * * [T]here is the further

advantage that this manner of feeding the troughs allows its usage with counterflow heat exchangers * * *.

Dargavel discloses a humidifier in which water is supplied to one end of a trough-shaped body. The water supply means, attached to one end of the trough-shaped body, comprises a shell-like body and a valve chamber which are separated by a common wall. Water enters the valve chamber through an inlet nipple and flows through an orifice in the common wall into the shell-like body and then into the trough-shaped body. As will be apparent, no further discussion of Dargavel is necessary.

## THE REJECTION

In his first action, the examiner stated:

Claims 1–4 are rejected as being unpatentable over the disclosure in Engalitcheff in view of the disclosed chamber 16 and reservoir 12 of Dargavel under 35 USC 103. Engalitcheff discloses the claimed structure except for the use of a "chamber" as well as a reservoir. In view of the disclosed use of the combination of a chamber 16 and reservoir 12 in Dargavel, the use of a chamber in the device of Engalitcheff would be additive only, thus obvious in the sense of 35 USC 103.

In response thereto, purportedly under the provisions of Rule 131,[4] appellant submitted his own affidavit, the pertinent passages of which read:

(4) That he [Facius] assisted in the development of the heat exchange apparatus which is illustrated and de-

scribed in Patent No. 3,146,609, working with John Engalitcheff, Jr., * *;

(5) That *his contribution* to the apparatus illustrated in Patent No. 3,146,609 was the water distribution box;

(6) That he did not develop the trough structure shown and claimed in said patent, said trough structure being the sole invention of said John Engalitcheff, Jr.;

(7) That the application above identified was filed for the purpose of claiming his invention, that is the water distribution box. Accordingly, he knows that the water distribution box shown in Patent No. 3,146,609 was known to him before April 27, 1964, since it was *his own design*. [Emphases added.]

Appellant also submitted the patentee Engalitcheff's affidavit which stated:

That he [Engalitcheff] has read the Affidavit of Thomas F. Facius * * and that the statements of said Affidavit are to his personal knowledge true and accurate.

The examiner found the affidavits insufficient to comply with Rule 131; he then made final the aforementioned rejection.

In affirming the examiner, the board stated:

The bare allegation in appellant's affidavit that the water distribution box shown in the Engalitcheff patent is his contribution and was known to him prior to April 27, 1964, the filing date of the patent, and the bare statement in Engalitcheff's affidavit that the statements in appellant's affidavit are accurate are not a showing of facts within the contemplation of Rule 131(b). * * *

4. Although it seems clear that appellant's characterization of the affidavits as "Affidavits under Rule 131" was a misnomer, we said in In re Land, 368 F.2d 866, 879–80, 54 CCPA 806, 825 (1966): "[T]he proper subject of inquiry [is] not compliance with Rule 131 but what the *evidence* [shows] as to *who* invented the subject matter disclosed by [the reference]

which was relied on to support the rejection" and "[e]vidence of such a state of facts, whatever its form, must be considered." [Emphasis supplied.] Even though the affidavits fail to satisfy the requirements of Rule 131, they *are* "affidavits traversing grounds of rejection," which are permitted under Rule 132, and may be considered as evidence.

Appellant further contends that the Engalitcheff patent constitutes in effect appellant's own publication of the water distribution box shown but not claimed in said patent and, accordingly, he does not have to show completion of the invention before his own publication date or to swear back of his own work. We are not impressed with this argument.

The board quoted from the examiner's Answer that:

The question of patentability here is whether Engalitcheff is available as a reference against the claims of appellant. Appellant has not contested the propriety of the rejection should Engalitcheff prove to be available as a reference against the claims.

Appellant having made no contrary allegation of record, we accept those statements; and the sole issue is the availability of Engalitcheff as a reference against appellant.

OPINION

Although Engalitcheff has no claim to the water distribution box *per se*,[5] representative claims 1–3 show what he *did* claim as *his* invention:

1. In an evaporative heat exchanger including a heat exchange region and means to pass air upwardly through said region, the improvement that comprises a plurality of generally U section troughs arranged in spaced relation above said region, each trough having V notches in a side wall, *means to flow water into said troughs in a direction generally parallel to the longitudinal axis thereof,* and means within each trough to maintain a constant level of water through-out its length whereby the flow from all the notches will be substantially equal. [Emphasis added.]

2. In an evaporative heat exchanger including a heat exchange region and means to pass air upwardly through said region, the improvement that comprises a plurality of generally U section troughs arranged in spaced relation above said region, each trough having V notches in a side wall, *means to supply equal volumes of water to one end only of each of said troughs,* and means within each trough to maintain a constant level of water through-out its length whereby the flow from all the notches will be substantially equal. [Emphasis added.]

3. In an evaporative heat exchanger including a heat exchange region and means to pass air upwardly through said region, the improvement that comprises a plurality of generally U section troughs arranged in spaced relation above said region, each trough having V notches in a side wall, *a distribution box having orifices therein each communicating with a trough, means to maintain a predetermined head of water in said box,* and means within each trough to maintain a constant level of water throughout its length whereby the flow from all the notches will be substantially equal. [Emphasis added.]

As there is no double patenting rejection of record, this is only relevant in regard to the consistency between the aforementioned affidavits and Engalitcheff's patent claims and oath.

 Engalitcheff contains no reservation clause since it is prohibited by Rule 79,[6] and, of course, there could

5. That is, Engalitcheff has no claim directed to the sub-combination of the means to flow water into the troughs (*e g.*, the water distribution box). The only recitation, broad or narrow, of such means in the claims is *in combination* with the troughs; however, the water flow means is recited in varying scope within the seven combination claims. And, all of the claims are for the combination; that is,

no claim is directed to the sub-combination of the trough, *per se.*

6. United States Patent Office Rules of Practice in Patent Cases state:

79. *Reservation clauses not permitted.* A reservation for a future application of subject matter disclosed but not claimed in a pending application will not be permitted in the pending application, but an application disclosing unclaimed

be no reference to the appellant's *application* in Engalitcheff as permitted by that rule since appellant had not yet filed when Engalitcheff issued. In fact, there is nothing *in the Engalitcheff patent itself* to the effect that the water distribution box was not invented by Engalitcheff or is to be attributed to anyone else. Thus, there can be no doubt that Engalitcheff is *prima facie* available as a reference against appellant.

Since the patent is *prima facie* available as a reference against appellant, the burden is on appellant to establish the *facts* necessary to "overcome" that patent. We feel that appellant has failed to meet this burden.

 If a reference is not a statutory bar under 35 U.S.C. § 102(b), then that reference may be "overcome" upon a proper showing of facts. One way to "overcome" a reference is to "antedate" it, that is, to provide a factual showing that the effective date of the reference is not "before the invention thereof by the applicant for patent" as expressed in both 35 U.S.C § 102(a) and 35 U.S.C. § 102(e).

The most common way to "antedate" a reference is to submit an affidavit satisfying the requirements [7] of Rule 131.[8] This court's opinions in In re Stemple, 241 F.2d 755, 44 CCPA 820 (1957), In re Wilkinson, 304 F.2d 673, 50 CCPA 701 (1962), and In re Tanczyn, 347 F.2d 830, 52 CCPA 1630 (1965), analyze what a Rule 131 affidavit must show to "antedate" a reference, particularly what "part" of the *claimed* invention must be proved to have been invented prior to the reference date.

In his brief, the solicitor quotes from *Tanczyn*, supra, 347 F.2d at 833, 52 CCPA at 1630:

> The primary consideration is whether, in addition to showing what the reference shows, the affidavit also establishes possession of either the *whole* invention claimed or something falling *within* the claim, in the sense that the claim as a whole reads on it.
>
> It is not sufficient to show in a Rule 131 affidavit that an invention wholly outside of that being claimed was made prior to the reference date. Such fact is irrelevant.

The solicitor then points out that appellant is claiming, in all instances, a water distribution box *with* an elongated chamber; and he argues that the affidavits therefore fail to establish "possession of either the *whole* invention claimed or something falling *within* the claim" since, at most, the affidavits establish possession, prior to the reference date, of a water distribution box *without* any chamber.

The solicitor's argument might have more force if the present appellant were seeking to "antedate" the reference by a Rule 131 affidavit in the conventional sense *as was the situation in In re Tanczyn*. But here, unlike *Tanczyn*, appellant has shown that the relevant disclosure in the reference was his *own* "contribution" to the apparatus disclosed therein; and he argues that, absent a statutory bar, one's own disclosure should not be available as a reference against him. Thus, as we view it, *Tanczyn* is inapposite to the present case.

As was pointed out in In re Land, 368 F.2d 866, 878, 54 CCPA 806, 823 (1966), "Rule 131 * * * is only one way of overcoming a reference." As a matter of fact, appellant considers *Land*

---

subject matter may contain a reference to a later filed application of the same applicant or owned by a common assignee disclosing and claiming that subject matter.

7. See In re Harry, 333 F.2d 920, 51 CCPA 1541 (1964), with respect to the requirements of a Rule 131 affidavit.

8. Pierce v. Watson, 107 U.S.App.D.C. 226, 275 F.2d 890 (1960), discussed the fact that an applicant could "swear back" of a patent used as a reference under 35 U.S.C. § 102(e) and recognized that "[s]uch procedure is authorized by Patent Office Rule 131 *and, in certain situations, by Rule 132.*" [Emphasis added.] *Id.* at n. 2.

to be controlling and finds it impossible to distinguish the situation here from the situation in that case. In *Land,* a Land patent and a Rogers patent, each to individuals, *were* held to be available as prior art references for the purposes of a 35 U.S.C. § 103 obviousness rejection of a Land-and-Rogers joint application, the same two individual patentees forming the joint entity. Land-and-Rogers had sought to "overcome" the references without "antedating" them; and they had filed no affidavits. The Land-and-Rogers joint invention undoubtedly had come *after* their individual inventions relied upon as prior art. The issue was solely a question of law concerning inventive entities, namely, whether Land and Rogers as *individual* inventors were each "another" with respect to Land-and-Rogers as *joint* inventors. The confusion therein had arisen as a result of an "unfortunate" remark in In re Blout, 333 F.2d 928, 52 CCPA 751 (1964), and the portion of the *Land* "opinion"[9] to which appellant alludes, is essentially an explanation of the "true basis" of the *Blout* "decision." See *Land,* supra, n. 10. Thus, *Land* is certainly not controlling and is so factually distinguished as to be inapposite to the present case other than for its enriching legal analysis.

Taken in this light, we view appellant as urging *In re Blout,* supra, *as explained in In re Land,* supra, as controlling. In *Blout,* a Rogers patent, disclosing both non-insulated and insulated dye developers but not claiming the latter, was the basis of a 35 U.S.C. § 102(e) anticipation rejection of a Blout-and-Rogers joint application claiming the insulated dye developers, the Rogers patentee and co-applicant being the same individual. Blout-and-Rogers submitted affidavits constituting sworn statements of fact

clearly attributing the invention of the insulated dye developers to the joint entity, Blout-and-Rogers, as indicated by the Rule 79 cross-reference in the Rogers patent. Before discussing the legal implications of *Blout,* we should consider In re Mathews, 408 F.2d 1393, 56 CCPA — (1969), decided today, which involves facts quite similar to *Blout;* the reasoning of the two will be treated together, infra.

In *Mathews,* a Dewey patent, disclosing a time delay protective device with a particular gating means but not claiming the gating means, was the basis of a 35 U.S.C. § 102(e) anticipation rejection of Mathews' application claiming the gating means, Mathews and Dewey being co-workers. Mathews submitted Dewey's affidavit averring that the relevant, unclaimed subject matter disclosed in his patent was not invented by him but was first disclosed to him by Mathews.

In both *Blout* and *Mathews,* the references were *prima facie* available for the 35 U.S.C. § 102(e) anticipation rejections but were deemed to have been "overcome." In both cases, *the patents fully disclosed the claimed inventions,* and that fact itself indicated that *some-one* necessarily had made those *claimed* inventions *prior to the filing dates;* the only question in those cases was *who* had made the inventions upon which the relevant disclosures in the patents were based. If it were the appellants, then certainly appellants "antedated" the reference; and, not being a statutory bar, the reference could not negative appellants' novelty. In both cases, the fact *established by affidavit* was that the patentees had derived their knowledge of the relevant subject matter from appellants. *Moreover, appellants further showed that they themselves had made the inventions*[10] *upon which the relevant*

9. "Decision" is not synonymous with "opinion." A *decision* of the court is its judgment or decree in settlement of a controversy submitted to it; the *opinion* is the reasons given for that judgment or decree, or the expression of the views of the court.

10. It goes without saying, that "inventions" is a term broader than "patentable inventions" and that, in this context, patentability is of no significance. Appellants having shown that they *originated* the inventions disclosed in the reference, lack of novelty and/or obviousness was immaterial to overcome the references.

*disclosures in the patents had been based.* This is a significant fact. If all the appellants had done was to bring the invention of another to the attention of the patentees, then that disclosure in the patent would have been the invention of another and still available as *prior art*, albeit it was appellants' "contribution" to the disclosure. In both *Blout* and *Mathews*, the appellants had *claimed* the inventions disclosed in the patents and had made oaths that they were the inventors of everything *both* described *and* claimed. *The claims and appended oath evidenced the fact of inventorship by the appellants.* Thus, the appellants had made a satisfactory showing that the disclosure relied upon was a description of and based upon *their own inventions*. It necessarily followed, then, that the appellants had made their inventions prior to the filing dates of the respective patents. In effect, both Blout-and-Rogers and Mathews "antedated" the references by showing that the references did not, *in fact*, "evidence" lack of novelty. "[T]hat rejections are based on statutory provisions, not on references, and that the references merely supply the *evidence* of lack of novelty, obviousness, loss of right or whatever may be the ground of rejection" was pointed out in In re Hilmer, 359 F.2d 859, 879, 53 CCPA 1288, 1313 (1966).

Turning now to the present case, we must determine what, *on the basis of the facts established in the record,* the Engalitcheff patent reasonably *evidences.*

■■ The solicitor urges "that a patent * * * constitutes, in itself, evidence of inventorship." We agree insofar as a patent evidences inventorship *by the patentee* of everything *both* disclosed *and* claimed. However, the existence of combination claims does *not* evidence inventorship by the patentee of the individual elements or sub-combinations thereof if the latter are not separately claimed apart from the combination. It is clear that the inventor of a combination may not have invented *any* element of that combination, much less

each of the elements. Here, Engalitcheff *did* claim to be the inventor of the *combination* of troughs *and* a water distribution box, but that does *not* evidence that he necessarily invented the water distribution box. Thus, we wholly disagree with the solicitor's contentions that "[t]he affidavits are clearly inconsistent with the claims of the Engalitcheff patent" and that there is a "presumption that the patent discloses only the patentee's invention."

■ The solicitor admits that Rule 131 is not the only way to overcome a reference which is not a statutory bar since Rule 131

is not " * * * intended to apply to a case where the publication appears without question to be a publication of the applicant's own invention." Ex parte Powell and Davies, 37 USPQ 285 (Bd. A., 1938).

We agree with that statement and further recognize the soundness thereof even if the publication should be in a patent. On the other hand, we also agree with the solicitor that, *on its face* "[t]he Engalitcheff patent does not appear 'without question' to be a publication of the applicant's invention." That, however, merely makes Engalitcheff *prima facie* available as a reference; it does not *conclusively* establish the availability, and *all* of the facts of record should be considered in that regard.

■ The solicitor additionally points out that appellant's *claimed* invention, as stated in the specification, "involves an *improvement* over the disclosure of * * [Engalitcheff]." (Emphasis added.) The solicitor urges that, by appellant's own admission, the patent disclosure was appellant's starting point and that the prior art referred to in Section 103 includes an applicant's admission as to the starting point for his invention. We agree where that "starting point" is what the applicant admits to be *in the prior art*. But certainly *one's own invention*, whatever the form of disclosure to the public, may not be prior art against oneself, *absent a statutory bar.*

This, then, brings us to the crux of the present case. The real question is whether, *in addition to establishing derivation of the revelant disclosure from himself,* appellant has also clearly established the fact that *he invented* the relevant subject matter disclosed in the patent. If he merely brought the prior art to the attention of the patentee, then the disclosure in the patent *is* available against appellant even though appellant was, in a fashion, responsible ·for that *particular* disclosure (*i. e.,* it was *his* "contribution" to the disclosure since he *"communicated"* the subject matter to the patentee). If on the other hand, *appellant invented* the subject matter upon which the relevant disclosure in the patent was based, then the patent may *not* be used as a reference against him notwithstanding the patent's silence as to the patentee's source of that subject matter. In this sense, the reference could be "overcome" since it would not be *prior* art against appellant. *In re Blout,* supra; *In re Mathews,* supra. See also *In re Land,* supra.

Appellant has not established inventorship in the same manner as did Blout-and-Rogers and Mathews since he did not *claim* the relevant subject matter in the patent[11] but rather only claimed an improvement thereon. However, failure to claim the invention disclosed in the reference is *not* fatal to a showing of inventorship; that *fact* may be established by *any evidence of record.*

Here, there are only the· aforementioned affidavits to evidence inven-

torship of the water distribution box disclosed in Engalitcheff. In reviewing the affidavits, we feel that they are not inconsistent with the possibility of appellant's having merely brought the prior art to the attention of the patentee and perhaps having done some "design" work on it, not significant enough to have made the water distribution box *his invention.* From the affidavit, appellant merely "assisted in the development of the heat exchange apparatus" disclosed in Engalitcheff in that "his *contribution* * * * was the water distribution box." [Emphasis added.] *All that is clearly identified as appellant's invention is the water distribution box claimed in the present application,* as stated in the first portion of (7) in the quoted passage of the affidavit, supra. That Engalitcheff's water distribution box was known to appellant prior to Engalitcheff's filing date does *not* establish appellant's inventorship thereof. Although appellant may have done some "design" work, he has not seen fit to characterize it as "his invention"; hence, we are not inclined to do so. Thus, we feel that appellant has not met the burden of proving *facts* sufficient to overcome the *prima facie* available reference.

Accordingly, the board's decision is affirmed.

Affirmed.

Judge SMITH participated in the hearing of this case but died before a decision was reached.

---

11. Of course, if appellant *had* claimed the disclosed water distribution box without the chamber, then appellant would have, in view of the facts established by the affidavits, "antedated" the reference since he would have shown possession, prior to the reference date, of "either the *whole* invention claimed or something falling *within* the claim."