Walter E. VOISINET, Appellant,

v.

Fred A. COGLIANESE and John E. McCorkle, Appellees.

Patent Appeal No. 8595.

United States Court of Customs and Patent Appeals.

March 9, 1972.

Rehearing Denied May 4, 1972.

William H. Webb, William H. Logsdon, Russell D. Orkin, Pittsburgh, Pa., Spencer B. Michael, Arlington, Va. (Webb, Burden, Robinson & Webb, Pittsburgh, Pa.), attys. of record, for appellant.

Paul L. Ahern, John E. Rosenquist, Phillip H. Mayer, Chicago, Ill., Richard H. Bradford, Arlington, Va. (Wolfe, Hubbard, Leydig, Voit & Osann, Chicago, Ill.), attys. of record, for appellees.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and RAO, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention of the sole count in issue to Coglianese et al. (Coglianese). Voisinet is involved on an application [1] filed August 13, 1962, while Coglianese is involved on an application [2] filed March 15, 1962, which was a continuation-in-part of an

1. Serial No. 216,471.

2. Serial No. 180,007.

application [3] filed April 12, 1961. The board accorded the party Voisinet the date of April 11, 1961, for conception and actual reduction to practice of the invention of the count, but awarded appellees priority [4] on the holding that they were entitled to the earlier date of December 19, 1960, for conception and actual reduction to practice. We affirm the decision of the board.

The count reads as follows:

A polyurethane foam prepared in the presence of a substantially petroleum hydrocarbon insoluble pine wood resin.

It is directed to a low density, rigid polyurethane foam which has good strength and low thermal conductivity, and which is relatively inexpensive to prepare. Polyurethane foams are conventionally prepared by reacting an organic polyol with a polyisocyanate and expanding the product by means of a blowing agent. In this invention, a pine wood resin which is "substantially" insoluble in petroleum hydrocarbons is incorporated into the reaction mixture as a substitute for a portion of the polyol with the result that cost is reduced while desired strength and insulation characteristics are preserved.

The Board of Patent Interferences found that it was undisputed by Voisinet that in the fall of 1960 Coglianese prepared a polyurethane foam containing "Belro" resin and had it tested for thermal conductivity and compressive strength. Coglianese drafted a report dated December 19, 1960, in which he indicated that the Belro foam was advantageous in its lower cost of production and good strength and insulating properties. The board accorded this latter date to Coglianese on the findings that the Belro foam was an embodiment upon which the count reads, that the foam was adequately tested, and that the

party Coglianese appreciated the success of the experiments with the Belro foams.

Appellant contends that the count does not read on a polyurethane foam prepared with Belro resin and urges that Belro, although a pine wood resin, is not *substantially* insoluble in petroleum hydrocarbons. It is further contended that the test for compressive strength was inadequate. For these reasons, appellant urges that the evidence was insufficient to establish conception and reduction to practice as of December 19, 1960, and it is to these two issues that we direct our attention.

### Is Belro a Substantially Insoluble Resin?

Appellant urges that Coglianese never attempted to prove the solubility characteristics of Belro even though it was their burden to so do. However, *appellant* introduced evidence to the effect that Belro is 52% gasoline (a mixture of petroleum hydrocarbons) insoluble. This evidence consisted of a product information bulletin put out by Hercules, the manufacturer of the resin and its supplier to Coglianese, which specified the gasoline insolubility of the product. In view of the fact that appellant admits the accuracy of the 52% figure, we have no difficulty in starting from that point. The Coglianese applications each disclose Belro to be 60% gasoline insoluble. In their brief before this court, appellees suggest that the 60% figure was obtained from Hercules product information bulletins issued subsequent to the one on which appellant relies and point to the testimony on cross-examination of Dr. Gregory, a Hercules employee called by appellant, which indicates that it is possible that certain shipments of Belro may have had insolubility values as high as 60% or even 70%. However, the board found that the evidence led to the

---

3. Serial No. 102,375.

4. Two additional applications, those of Ball et al., Serial No. 135,766, filed September 5, 1961, and Delmonte, Serial No.

229,999, filed October 11, 1962, were originally involved in this interference. However, these parties abandoned the contest, and the interference stands dissolved with respect to each of them.

conclusion that Belro is 52% insoluble, Coglianese does not seriously challenge that finding and argues for affirmance assuming 52%, and Voisinet agrees that that is the insolubility value.

The question becomes whether or not 52% is substantial in the context of gasoline insolubility of a pine wood resin. The parties focus on Gregory's testimony, appellant relying on the following portion from redirect examination:

By Mr. Logsdon [counsel for appellant]:

RDQ 218 Doctor, is or is not the difference in petroleum hydrocarbon insolubility the basis for separating "Belro" and "Vinsol"?

A Yes, it is.

RDQ 219 Was it so in 1961?

A Yes.

RDQ 220 Do you or do you not consider the "Vinsol" product sold by Hercules to be substantially petroleum hydrocarbon insoluble?

A Yes.

\* \* \* \* \* \*

By Mr. Logsdon:

RDQ 221 Do you or do you not consider the "Belro" product sold by Hercules to be substantially insoluble in petroleum hydrocarbons?

A In the context of your question, no, I do not consider it to be substantially insoluble in petroleum hydrocarbons.

Appellees assert that in context all Gregory meant was that Belro is relatively less gasoline insoluble as compared to Vinsol, the resin used by appellant and one which has a gasoline insolubility of about 83%. Coglianese stresses the following responses made by Gregory on cross-examination:

XQ 169 Have you had occasion to look up the meaning of the word "substantially" in the last few weeks?

A No, I have not.

XQ 170 There was considerable use of it in your direct examination this morning and I just wondered what "substantially" means to you. Would you tell me?

A You are asking what "substantially" means to me?

XQ 171 In the context of the testimony that was given this morning.

A "Substantially insoluble" would mean to me that less than a majority of the material would be soluble; "substantially soluble", that more than 50 per cent would be soluble.

Regarding this testimony, Voisinet contends that Gregory was offering a meaning for "substantial" in a general sense, but that in the context of gasoline insolubility, his view was that Belro was not substantially gasoline insoluble.

The board regarded the statements by Gregory as contradictory and resolved the issue as follows:

We are of the opinion that 52 percent, under the circumstances of this case, is a "substantial" proportion and consequently, we are of the opinion that Belro is a substantially petroleum hydrocarbon insoluble pine wood resin and reads on the count.

We agree with the board that 52% gasoline insolubility may properly be characterized as substantial. Equating "substantial" with greater than 50% is a reasonable construction of the term in this case and is one which came to the mind of appellant's witness when he was asked what the term means. While it is true that the same witness opined that Belro should not be regarded as substantially petroleum hydrocarbon insoluble, he offered no facts from which such a conclusion could be inferred, and the board was not bound by it. Opinion testimony by an expert witness does not establish any material fact as a matter of law, and an administrative agency is not bound to accept such testimony as conclusive, but may reject it in favor of other evidence. See 2 Am.Jur.2d Administrative Law, § 395. The ultimate question on review is whether there is evidence to support the board's conclusion, and we are satisfied that the record in this case contains such evidence.

■ Our conclusion does not mean that we disagree with the proposition advanced by appellant to the effect that a word in a claim or count should not be interpreted in a vacuum, but rather in the context of the invention defined in the claim or count. That is axiomatic. However, we believe that the approach of the board in this case was consonant with the principle, and that the construction given "substantial" was with full appreciation of the fact that it related to the solubility characteristics of a particular resin in a specific medium. Our review of the board's decision has been in the same light.

### Was the Testing Sufficient?

It is undisputed that Coglianese had the Belro foam tested for thermal conductivity, density and compressive strength, three tests which appellant agrees are important in the evaluation of a foam intended for use as thermal insulation. Appellant's contention is that the compressive strength test was inadequate since strength was tested in but one direction rather than along two mutually perpendicular axes. The argument finds its basis in the testimony of Voisinet himself. He testified that in 1959 the American Society for Testing Materials (ASTM) published a tentative method for the testing of the compressive strength of foams. Voisinet explained that the label "tentative" indicates that the method is a new one, and it retains that qualification until such time as it is "accepted as a standard and approved by the Society." The particular test in question was accepted in 1964.

Appellant's reasoning follows this line: The ASTM tentative method provided that a foam suspected of being anisotropic, i. e., having different properties along perpendicular axes, should be tested for compressive strength along the several axes; Coglianese admitted on cross-examination that these foams would probably not be expected to have uniform compressive properties along perpendicular axes; compressive strength was tested in only one axis contrary to the tentative method; therefore, the test was inadequate.

The board did not address itself to this specific argument. It merely concluded that the testing was adequate, especially noting that thermal conductivity was tested. The board was satisfied that the party Coglianese appreciated the success of the experiments. This is essentially the position of appellees. They point out that the intended use of the foam was as thermal insulation, and they therefore were concerned primarily with the thermal properties. They assert that testing for compressive strength in only one direction was sufficient to assure them that the foam would not collapse under atmospheric pressure. In sum, the testing was, in the view of Coglianese, adequate to convince them that they had indeed achieved a foam of lower cost functionally suitable for the intended purpose.

■■ To prove reduction to practice, the tests must be sufficient to establish the suitability of the invention for the intended purpose. See Knowles v. Tibbetts, 347 F.2d 591, 52 CCPA 1800 (1965); White v. Lemmerman, 341 F.2d 110, 52 CCPA 968 (1965). In the present case, the inquiry focuses on the suitability of the Belro foam as insulation, and the alleged deficiency in a particular test must be viewed in light of all the tests performed as well as the intended purpose of the invention. We conclude that the board was correct in holding the testing to be adequate. We are convinced that the several tests as a whole proved that a foam prepared by the use of a pine wood resin in lieu of a portion of the polyol would be suitable as insulation from the standpoints of thermal capacity and durability. That is all the tests need to have shown, and it would be taking an unduly restrictive view to hold the tests insufficient merely because of a failure to conform to all the details of an ASTM method, and a tentative one at that, when in point of fact the overall testing demonstrated the

foam to be sufficient for the intended purpose.

For the reasons stated herein, the decision of the Board of Patent Interferences awarding priority of invention of the sole counts in issue to the party Coglianese is affirmed.

Affirmed.