Application of David **DARDICK.**
Patent Appeal No. 9180.

United States Court of Customs and Patent Appeals.
May 23, 1974.

Alfred B. Levine, Washington, D. C., and Donald R. Nyhagen, Woodland Hills, Cal., attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Henry W. Tarring, II, Falls Church, Va., of counsel.

Before MARKEY, Chief Judge, RICH, LANE and MILLER, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–5 of appellant's application [1] entitled "Salvo Ammunition For Multiple Bore Open Chamber Gun." We *reverse*.

## The Invention

The claims on appeal are directed to ammunition for a "multiple bore open chamber gun." With reference to the figures set forth below, appellant's specification contains the following description of the preferred embodiment of the claimed invention:

  

Reference is made first to FIGS. 6 through 8 illustrating a salvo-type, multiple projectile open chamber ammunition round 10, according to the invention. The illustrated ammunition is cased ammunition and comprises an outer yieldable, noncombustible cartridge case 12 which is typically constructed of a suitable noncombustible plastic. * * * Cartridge case 12 has the preferred, generally triangular round shape in transverse cross-section which characterizes open chamber ammunition and includes front and rear transverse end walls 14 and 16, respectively, and longitudinal side walls 18. Contained within the cartridge case 12 are a plurality of projectiles 20 and a propellant charge 22.

The projectiles 20 are elongated longitudinally of the round, and, in this

1. Serial No. 787,754 filed December 30, 1968.

instance, have conventional bullet shapes. In the particular salvo ammunition illustrated, the projectiles are three in number and are uniformly spaced about the longitudinal axis of the round in such a way that the projectiles are disposed in radial planes, respectively, containing the axis and the three longitudinal apex edges of the cartridge case 12. Extending through the front end wall 14 of the cartridge case, in coaxial alignment with the projectiles, are bores 24. Sealed to the walls of these bores are obturating sleeves 26 frictionally receiving the projectiles. The propellant charge 22 fills the remaining interior volume of the cartridge case 12 in such manner that the propellant encapsulates the projectiles and their obturating sleeves. Mounted in the rear end wall 16 of the cartridge case 12 is a primer 28.

An open chamber gun, as described in appellant's specification, has a rotating cylinder with cut-out triangular sections running its length. The cartridge is laterally inserted into one of these sections and rotated into firing position within the breech.

The "multiple bore open chamber gun" in which this ammunition is employed has a number of bores (barrels) equal to the number of projectiles in the round, in this case three. When a round is fired in the gun, the projectiles are discharged simultaneously as a salvo, thereby increasing the likelihood that the target will be struck.

Claims 1 and 4 are representative of those on appeal:

1. Salvo-type ammunition to be fired in a multiple bore open chamber gun of the character described, comprising:

an ammunition round of generally triangular round shape in transverse cross-section having a central longitudinal axis and containing a rear propellant charge and a plurality of forward positionally fixed mutually axially coextensive elongate projectiles having individual longitudinal axes substantially parallel to and uniformly spaced from said central axis of said round, and said projectiles being angularly spaced in a pre-determined array about said central axis.

4. Ammunition according to Claim 1, wherein:

said ammunition round is an open chamber ammunition round including an outer yieldable noncombustible cartridge case of generally triangular round shape in transverse cross-section and having a front end wall;

said wall contains bores coaxially aligned with said projectiles, respectively; and

obturator sleeves sealed to the walls of said latter bores and receiving said projectiles, respectively.

### The Rejection

The references relied upon were:

| | | |
|---|---|---|
| Dardick [2] | 2,865,126 | December 23, 1954 |
| Hawthorne | 3,437,039 | April 8, 1969 |
| | | (filed March 7, 1962) |

Hawthorne describes a triangular shaped round for open chamber guns having three projectiles. Dardick describes a triangular round for open chamber guns having a single projectile which is surrounded by an obturating sleeve.[3]

Claims 1–3 and 5 were rejected under 35 U.S.C. § 102 as anticipated by Hawthorne. Claim 4 was rejected under 35 U.S.C. § 103 as unpatentable over Hawthorne in view of Dardick. In the examiner's view, it would have been ob-

---

2. One of appellant's own patents and a statutory bar under 35 U.S.C. § 102(b).

3. According to the Dardick patent, the function of the obturating sleeve is to seal the gap in the breech between the opening to the barrel and the cartridge case to prevent the escape of the propellant gases, generated when the round is fired, from the barrel end of the breech. It accomplishes this by expanding to fill the gap under the influence of the heat and pressure generated by the firing of the round.

vious to one of ordinary skill in the art to use the obturating sleeve of Dardick in the round described by Hawthorne.

In the proceedings below, appellant did not challenge the examiner's conclusion based upon his interpretation of the prior art. However, appellant did submit affidavits and corroborating evidence under the provisions of Rule 131 in order to have Hawthorne removed as a reference. The evidence submitted under Rule 131 consisted of two affidavits by appellant, a corroborating affidavit by an employee of the Dardick Corporation (Charles Scheidler), a document purporting to be a part of a proposal to be submitted to a licensee, hand-written report of firing tests allegedly carried out using cartridges like that described in the specification, and three photographs of a cartridge case like that described in the specification.

The examiner did not consider the affidavits and other evidence to be an adequate showing under Rule 131 for essentially two reasons. In his view, the evidence submitted neither adequately described the cartridge in question nor demonstrated that whatever cartridge was tested was actually reduced to practice before the filing date of Hawthorne. He summarized his position as follows:

In summary, all the exhibits submitted do not adequately describe the cartridge tested prior to the effective date of Hawthorne. The photographs submitted are clearly inadequate. The affidavits are not in sufficient detail so as to determine the cartridge developed and claimed reduced to practice prior to March 7, 1962.

The tests submitted as exhibits of a reduction to practice are certainly inadequate for that purpose. The mere fact that bullets were ejected from a gun barrel is certainly a "far cry" from a reduction to practice in the ammunition art. In the explosive ammunition art safety through reliability, consistency and accuracy must be considered for a true reduction to practice.

For its part, the board noted, without comment, the examiner's conclusions regarding the adequacy of the description of the cartridge in the affidavits and exhibits. However, after observing that the bullets tumbled in one of the firing tests reported, the board concluded that " * * * to have a reduction to practice in this art the bullets should not tumble."

*Opinion*

Appellant, with the solicitor's concurrence, states the issue to be resolved on this appeal as follows:

The sole issue in this appeal is the sufficiency of the affidavits and exhibits submitted under Rule 131 to eliminate a reference patent of Hawthorne.

However, for us to address this issue requires that we consider two subsidiary questions. The first is that directly addressed by the board, i. e., whether the evidence as embodied in the firing tests is sufficient to show that whatever cartridge was tested was reduced to practice before the filing date of Hawthorne. The second is whether the affidavits and exhibits submitted under Rule 131 present an adequate description of the invention for the purpose of having Hawthorne removed as a reference.

■ Although the board did not expressly approve the examiner's decision regarding the adequacy of the description of the invention, neither did it expressly overrule the examiner on this ground for rejecting the showing under Rule 131. Accordingly, we must regard it as having been affirmed. See Patent Office Rule 196(a); In re Halliwell, 358 F.2d 1008, 53 CCPA 1112 (1966), and In re Rubinfield, 270 F.2d 391, 47 CCPA 701 (1959). We turn now to a consideration of these questions in the order presented.

*The firing tests are adequate to establish that the cartridge tested was reduced to practice.*

In response to the first office action, appellant submitted the report of the

firing tests as an exhibit in support of his first affidavit under Rule 131. In the second office action received by him, in which the rejection was made final, the examiner did not criticize this report except to say that it was given no weight because of the inadequacy of the description of the cartridge. It was in response to this that appellant filed his second affidavit with Scheidler's corroborating affidavit. The affidavit was entered but deemed inadequate, without comment, to overcome the rejection. It was not until he prepared his answer to appellant's brief on appeal to the board that the examiner raised the question of the adequacy of the firing test as proof of a reduction to practice. He observed:

> The success of the test results is not clear from the report. The only success from the report appears to be that the bullets were ejected and hit a target. It appears that the bullets tumbled (test # 1), that the sleeve imbedded in the barrel (test # 3), that something broke in test # 5, that only one bullet was used in test # 9 and that no sleeve was used in test # 10.

As we have already indicated, the board focused on the fact that in test #1 all the bullets tumbled. Appellant, in a request for reconsideration adressed to the board after its decision adverse to him and in his brief on this appeal, argued that the problems alluded to by the examiner are characteristics of the gun rather than the ammunition and, furthermore, that these problems were all corrected in subsequent tests. The record supports his arguments.

With respect to the observation about test # 3 wherein a sleeve embedded itself in the barrel, appellant pointed out that the barrel was modified in test # 4 and there was no repeat of this occurrence.

The "something broke" in test # 5 was a weld holding the three barrels together. We think this an obvious defect in the gun rather than in the cartridge itself. Most of the tests employed different barrels as the length and bore size were changed, and in some cases rifling provided, in different tests. In no test other than test # 5 did a weld failure occur.

The test referred to by the board appears to be test # 1. It is true that all the bullets did tumble. However, in support of his position, appellant pointed out that the barrels used in this test were not rifled and in any gun lacking a rifled bore, no stabilizing spin is imparted to a bullet and tumbling occurs. He has directed our attention to test # 8 as showing that by using a rifled bore the tumbling problem can be corrected.

For his part, the solicitor asserts that even this test is inadequate since it appears that one of the three bullets tumbled anyway. However, the fact that two of the three bullets did not tumble when a rifled bore was used tends to strongly support appellant's argument that the occurrence of tumbling is a result of characteristics of the bore rather than the cartridge.

Going beyond this, we do not believe that the occurrence of tumbling negates a reduction to practice in any event. The court takes judicial notice of the fact that *guns* were satisfactorily employed in war and sport long before the *rifle* was invented. To prove a reduction to practice, all that must be shown is that the invention is suitable for its intended purpose. See Voisinet v. Coglianese, 455 F.2d 1064, 59 CCPA 958 (1972) and Knowles v. Tibbetts, 347 F.2d 591, 52 CCPA 1800 (1965). There is no requirement for a reduction to practice that the invention, when tested, be in a commercially satisfactory stage of development. See In re Anthony, 414 F.2d 1383, 56 CCPA 1443 (1969). In this case the tests performed show that the cartridge is suitable for its intended purpose since in every test when the cartridge was fired all the bullets left the barrels and struck paper targets. Accordingly, we hold that the firing tests are adequate to show that the cartridge tested was reduced to practice.

*The Rule 131 affidavit and supporting evidence contain an adequate description of the invention.*

In view of our conclusion that the firing tests show that whatever round was tested was reduced to practice, we believe that the affidavit[4] made by Dardick under Rule 131 and the supporting evidence, including the corroborating affidavit of Scheidler, are sufficient to have Hawthorne removed as a reference.

In his affidavit, Scheidler stated that he was present at the firing tests relied upon by Dardick to prove his alleged reduction to practice. In the affidavit, Scheidler described the cartridge used in those tests as follows:

> THAT each test round of open chamber ammunition which was fired in the firing tests of Exhibit A consisted of a plastic cartridge case of generally triangular cross-section containing three separate projectile bores located within the three apex portions of the case in laterally spaced parallel relation to the central axis of the case and opening forwardly through the front end of the case and rearwardly to a single coaxial powder chamber in the rear end of the case containing a powder charge, three separate projectiles (bullets) fitted within individual sealing sleeves fixed in the three projectile bores, and a primer at the rear end of the case for igniting the powder charge.

> THAT Exhibits B1, B2, and B3 are photographs of one of the open chamber cartridge cases which was made at the Dardick Corporation for use in the firing tests described in Exhibit A;

Exhibit A referred to in the affidavit is a handwritten test report. The three photographs are in sufficient detail to show that the cartridge case has a cross-section in the shape of an equilateral triangle with one end having three openings (bores for the bullets) whereas the other end has a single opening.

Generally speaking, Dardick's own affidavit has the same description of the cartridge as that appearing in Scheidler's affidavit. The examiner's only criticism of these affidavits seems to be that they describe a cartridge unlike that described in the application, for he stated:

> It appears that the appellant is attempting to swear back of the Hawthorne reference by a reduction to practice of an embodiment of an invention not disclosed in the application.

The examiner's reason for this conclusion is that Dardick's and Scheidler's affidavits, in nearly identical language, refer to the obturating sleeves as being "fixed within the three projectile bores." In his view, the language of claim 4 means "that the sleeve is sealed to the forward wall of the cartridge."

Putting aside for the moment the question of whether the examiner was correct in his assertions regarding the obturating sleeves, we fail to see the relevance of this objection to the affidavits insofar as claims 1–3 and 5 are concerned. It will be recalled that these claims read upon a cartridge whether or not it employs obturating sleeves. Accordingly, these claims read upon the structure described in the affidavits even if that structure is not the one actually described in the application. More importantly, since the firing tests prove that whatever cartridge was described by Scheidler was reduced to practice, the affidavits establish that appellant was in possession of an invention within the scope of claims 1–3 and 5 prior to the effective date of Hawthorne as a reference.

We know of no legal requirement that the embodiment of an invention relied upon as a reduction to practice must be identical to that described in the application for a patent. A reduction to practice may very well be followed by improvements before the appli-

---

4. The second of his two affidavits.

cation for patent is filed. Furthermore, it is significant that 35 U.S.C. § 112 merely requires that the "best mode" rather than every mode "contemplated by the inventor" shall be set forth in the application.

We also believe that the examiner is in error insofar as his objections to the affidavits relate to the description of the obturating sleeves. It is our view that he must have reached his conclusion because of a misapprehension of what claim 4 requires.

From his remarks, it is clear that the examiner felt that the obturating sleeve must be sealed to the front end walls of the cartridge. However, it seems clear to us that the claim requires that the sleeve must be sealed to the walls of the *bores* themselves rather than to the end wall of the *cartridge*.

It is true that the affidavits state that the sleeves were "fixed in the three projectile bores" rather then "sealed to the walls" as stated in claim 4. However, these expressions do not differ materially in scope. Assuming arguendo that the term "fixed" in the affidavits is somewhat broader than the term "sealed" in the claim, certainly one way to *fix* the sleeves in the bores is to *seal* them to the walls. For his part, appellant points out that in the description of the cartridge in Hawthorne there is no reference to sleeves at all, much less to their being "fixed" or "sealed," and that his and Scheidler's affidavits, regardless of how they describe the sleeves, show that he had possession of at least as much of the invention (as defined by claim 4) as is shown by the reference. He argues, without citation of authority, that to have a reference removed "[b]y established law, Applicant is required to show only so much as is shown by the reference."

Appellant's view is too broadly stated to be generally applicable. See In re Tanczyn, 347 F.2d 830, 52 CCPA 1630, (1965). However, this case is factually so similar to that of In re Stryker, 435 F.2d 1340, 58 CCPA 797 (1971) that our decision there compels us to agree with appellant in this instance.

We have already pointed out that since the firing tests show that the cartridge tested was reduced to practice, the showing under Rule 131 is adequate to have Hawthorne removed as a reference against claims 1–3 and 5 which literally read on subject matter disclosed therein. The only difference between the subject matter disclosed in Hawthorne and that defined by claim 4 is the obturator sleeve. That difference is so small, as shown by the Dardick reference which shows that obturator sleeves were known to the art prior to Hawthorne, as to render the claim obvious over Hawthorne. As this court pointed out in *Stryker*, to hold that Hawthorne is not removed as a reference against claim 4 would lead to an anomalous result, i. e., the showing under Rule 131 would be adequate to have Hawthorne removed as a reference against claims 1–3 and 5 but insufficient to remove the same reference against a claim narrowed by a limitation which would have been obvious to one skilled in the art when Hawthorne's disclosure became part of the prior art.

It is, perhaps, pertinent to point out that the rejection in this case involved two references, where as in *Stryker* only one reference was involved. However, under the facts of this case, we consider that to be an immaterial difference between the two cases, since the Dardick reference merely showed what one skilled in the art would be expected to know at a date prior to the effective date of Hawthorne as a reference.

For the foregoing reasons, the decision of the board affirming the rejection of claims 1–5 is reversed.

Reversed.