George J. J. RANDOLPH, Jr., Appellant,

v.

Ralph S. SHOBERG and Thomas A. Ulicny, Appellees.

Appeal No. 78–595.

United States Court of Customs and Patent Appeals.

Feb. 1, 1979.

Rehearing Denied March 8, 1979.

John M. McCormack, Kolisch, Hartwell, Dickinson & Stuart, Portland, Or., of record, for appellant.

Thomas N. Young, G. Gregory Schivley, Krass & Young, Troy, Mich., of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from the decision of the Board of Patent Interferences (board) awarding priority to Shoberg et al. (Shoberg), the senior party. We reverse.

### Background

Shoberg was issued U.S. patent No. 3,938,603 entitled "Constant Moment Weigh Scale With Floating Flexure Beam" on February 17, 1976, on an application filed December 30, 1974. Randolph, the junior party, filed an application entitled "Multipoint Load-Summing Apparatus" on May 5, 1975. On February 10, 1977, Randolph amended his application by copying claims 1, 8 and 17 of the Shoberg patent and submitted his declaration and the declaration of his patent attorney, Dickinson, under 37 CFR 1.204(c) for the purpose of provoking an interference with the Shoberg patent.

Randolph's declaration set forth the structure and mode of operation of an electromechanical load sensor but was silent about any testing of the device. Dickinson's declaration merely related to the disclosure papers he had received from Randolph.

After considering these declarations, the Examiner of Interferences, by letter of August 11, 1977, issued to Randolph an order to show cause why summary judgment should not be entered against him under 37 CFR 1.228 for failing to make a sufficient showing under 37 CFR 1.204(c) to entitle him to a prima facie award of priority with respect to Shoberg's filing date. The examiner stated Randolph's declaration failed to set forth facts from which it could be concluded that he completely reduced his invention to practice prior to Shoberg's filing date. The declaration was found to be insufficient to corroborate the testing and successful operation of the Randolph device.

In response to the order, Randolph and Dickinson both submitted supplemental declarations. In his supplemental declaration, Randolph stated that he had completely reduced his invention to practice prior to Shoberg's filing date. Randolph additionally submitted eight exhibits which included sketches of his device and apparent test results. These test results comprised placing a 20 pound weight at various locations on the platform of his load-summing device (or weigh scale) and examining the output to see whether it remained constant. Dickinson's supplemental declaration did not corroborate this test but it did state, however, that in May of 1974 Randolph showed him a working model of his device and that this model included all of the elements recited in the interference counts. Dickinson further declared that Randolph demonstrated this model to him in the following manner:

> The demonstration by Mr. Randolph illustrated how, by pressing down on the scale's load-support platform, end couples were transmitted into the bendable bar in the scale for summing, and for activation of piezoresistive elements bonded to the bar. I also witnessed that a direct, proportional electrical read-out resulted from such action.

### The Board Opinion

The board considered the initial and supplemental declarations of both Randolph and Dickinson in reaching its decision. Based upon these declarations, the board found that, prior to Shoberg's filing date, Randolph had constructed a weigh scale

with component parts present in the arrangement recited in the interference counts. However, the board held that Randolph's evidence of testing was insufficient to establish an actual reduction to practice prior to Shoberg's filing date and, therefore, summary judgment was entered against Randolph.[1]

The pertinent portion of the board's opinion is as follows:

In *Goodrich v. Harmsen et al.,* 58 CCPA 144 [1144], 442 F.2d 377, 169 USPQ 553 (1971) the court indicated that test results should be sufficient to persuade practical men that the product tested will serve the purpose for which it was designed and that it can be commercialized. The brief, simple pressure test witnessed by Dickinson does not illustrate that Randolph's device would satisfactorily function as a weigh scale. The force applied to the load-support platform was apparently unknown and any electrical read-out could not be confirmed as accurate. Accordingly, the statement of Dickinson that he witnessed a direct, proportional electrical read-out is a mere conclusion unsupported by facts. Furthermore, Dickinson's assertions in his supplemental declaration establish no more than that he witnessed the application of a single force [pressing down] to the lead-support platform. It appears elementary to this Board that a basic requirement in establishing successful operation of a weigh scale is that of showing that the device will provide accurate readout of diverse weights or forces over a given range.

In view of our discussion above, it is apparent that the well established requirement for corroboration has not been satisfied.

The averment of the inventor, George Randolph, that the sums of weights applied to scale platforms produced related electrical output readings, even if corroborated, would be inadequate to establish

successful operation of his device. Randolph does not assert that each reading accurately identified the sum applied, nor has he provided any test data to that effect. His further averment to the effect that his scales accurately weighed a twenty pound weight at different spaced points on the load-receiving platform is uncorroborated and is insufficient to show that the scales would accurately weigh anything but a twenty pound load.

## The Counts

The counts in issue read as follows:

1. Floating beam weigh scale apparatus comprising: a base, a load receiving member spaced from the base, first and second pivot members disposed between the base and load receiving members, load transmitting means interconnecting the pivots, the base, and the load receiving member to produce moments in the pivots of opposite sense and about spaced axes, a substantially rigid beam connected to and extending between the pivots, and means carried by the beam for producing a signal related to the bending stress therein over the elastic bending range thereof.

2. Apparatus as defined in count 1 wherein the means carried by the beam includes at least one strain gage resistor intimately bonded to the beam and responsive to the bending stress therein to produce a variable electrical resistive characteristic.

3. In a weigh scale: a pair of spaced members, means connecting the pan to said members to produce in said members turning moments of opposite sense and related to loads applied to the pan, a beam of rigid material connected between said spaced members and of substantially greater length than thickness, and means for detecting the extent of bending of said beam as an indication of

---

1. Randolph submitted to the board a second supplemental declaration of his attorney, Dickinson, along with a Request for Reconsideration. The board held this declaration to be improper subject matter on reconsideration be-

cause it was not before the board at the time of its decision. On appeal, Randolph has not urged any error in that holding, and we have not considered this declaration in reaching our decision.

the magnitude of the load applied to the pan.

## OPINION

■ Since the board determined that Randolph had constructed a weigh scale fully satisfying the language of the counts prior to Shoberg's filing date, the sole issue on appeal is whether the declarations of Randolph and Dickinson set forth corroborated testing of Randolph's device which was sufficient to establish an actual reduction to practice prior to Shoberg's filing date.[2] The only corroborated evidence of testing was Randolph's demonstration of his device to Dickinson.[3] The board determined that this test was insufficient to show that the device would suitably perform as a weigh scale and it entered summary judgment against Randolph. We disagree and, therefore, reverse.

■ Both Shoberg's brief and the board opinion indicate that successful testing of a weigh scale can only be demonstrated by an accurate readout for diverse weights or forces over a given range. While this extent of testing may be necessary for the commercial refinement of a weigh scale, it is not required, in this instance, to establish an actual reduction to practice. As we stated in *In re Dardick*, 496 F.2d 1234, 1238, 181 USPQ 834, 837 (Cust. & Pat.App.1974):

> To prove a reduction to practice, all that must be shown is that the invention is suitable for its intended purpose. See *Voisinet v. Coglianese*, 455 F.2d 1064, 59 CCPA 958, [173 USPQ 16] (1972) and *Knowles v. Tibbetts*, 347 F.2d 591, 52 CCPA 1800, [146 USPQ 59] (1965). There

is no requirement for a reduction to practice that the invention, when tested, be in a commercially satisfactory stage of development. See *In re Anthony*, 414 F.2d 1383, 56 CCPA 1443 [162 USPQ 594 (1969).

*See also, Cochran v. Kresock*, 530 F.2d 385, 188 USPQ 553 (Cust. & Pat.App.1976); *Steinberg v. Seitz*, 517 F.2d 1359, 186 USPQ 209 (Cust. & Pat.App.1975).

Our determination of whether Randolph's abbreviated test demonstrated that his invention was suitable for its intended purpose will be significantly aided by an understanding of the precise nature of the invention. In his supplemental declaration, Randolph explains that the object of his invention was to construct a weigh scale using many of its conventional components but substituting an elongated unitary bendable bar for the complicated links and springs commonly employed to sum the load carried by a scale. Piezoresistive devices mounted on the bendable bar transform the deformation of the bendable bar into electrical signals which represent the weight present on the scale. As is evident from the language of the counts, the generation of such a signal was critical to an actual reduction to practice.

■ The test performed by Randolph in Dickinson's presence comprised pressing down on the weigh scale's load-support platform and observing the changes in the readout. Inherent in such "pressing-down" is a range of forces applied to the load-support platform, and Dickinson declared that he witnessed what amounted to changes in the readout that related to the applied range of

2. Randolph, as one argument in his brief states, urges that his device is so simple that no testing was required to prove an actual reduction to practice. This position was first urged in Randolph's request of the board for reconsideration of its decision. The board considered this position to the extent of finding it improper subject matter on reconsideration because it was not before the board at the time of its decision. Even assuming arguendo that this issue of the necessity of testing is properly

before us, we are not of the opinion that Randolph's invention is so simple that its suitability for its intended function can be determined by mere inspection and that corroborated test results are not required.

3. We agree with the board's holding that no significance can be given to Randolph's previously mentioned tests with the 20 pound weight because these tests were uncorroborated. *Bennett v. Serota*, 477 F.2d 1385, 177 USPQ 753 (Cust. & Pat.App.1973).

forces.[4] Whether the changes observed were actually *directly proportional* to the "pressing-down" force is not critical to the reduction to practice because all that needed to be demonstrated was a change in the readout which was *related* to the "pressing-down" force. Since the board stated that the device upon which this test was performed included all the structural limitations of the count, and in view of Dickinson's observation of the operation of the device as stated in his declaration, our conclusion is that the device performed as it was intended to perform, i. e., it produced output signals related to the bending stress on the beam as caused by the "pressing-down" force applied by Randolph.

The board stated that it was "elementary" that the successful operation of a weigh scale could only be demonstrated by tests which yielded accurate readouts for diverse weights over a given range. While such a showing that the scale is accurately calibrated may be required before it would be merchandised, such precise operation is not required to establish a reduction to practice. This court has stated that "[a] reduction to practice does not require that the invention be perfect or incapable of further improvement." *Cochran v. Kresock,* supra 530 F.2d at 391, 188 USPQ at 557.

Since, before Shoberg's filing date, Randolph constructed a device satisfying the interference counts and further demonstrated that this device performed its intended function as outlined in the interference counts, we *reverse* the decision of the board entering summary judgment against Randolph.

*REVERSED.*

MARKEY, Chief Judge, dissenting, with whom RICH, Judge, joins.

The majority incorrectly applies the legal standard for testing needed to prove a reduction to practice.

Whether Randolph's test model included all the parts recited in the counts has no bearing on consideration of the adequacy of testing. The counts are not directed to a mere collection of interconnected parts. They require that the parts be so interconnected as to function as a weigh scale. Tests submitted in proof of reduction to practice of a weigh scale must demonstrate existence of some relationship between the readout and the amount of force applied to the load-support platform.

The "test" witnessed by Dickinson demonstrated only that a readout occurred upon application of some unknown force to the platform. Application of the unknown force involved in Randolph's "pressing down" cannot substitute for application of a variety of discrete, known weights. Dickinson's merely visual observation did not demonstrate that the readout at any given instant was related to the force applied to the scale at that moment.

---

4. Dickinson stated in his declaration that he observed a "direct, proportional electrical readout" as a result of the forces applied by Randolph. The board labeled this as a "mere conclusion unsupported by facts." This is true if, as the board did, the statement is interpreted to mean that he knew the precise magnitudes of the forces being applied by Randolph. But Dickinson's statement can, at least, be reasonably interpreted to mean that he observed the readout change as the forces were applied and that the changes in the readout were related to the applied forces. This is all that the language of the counts requires.