55 CCPA

**Arthur B. WINTER, Appellant,**

v.

**Maurice P. LEBOURG and Harry S. Arendt, Appellees.**

**Maurice P. LEBOURG, Appellant,**

v.

**Arthur B. WINTER and Harry S. Arendt, Appellees.**

**Patent Appeal Nos. 7919, 7930.**

United States Court of Customs and Patent Appeals.

May 16, 1968.

Rehearing Denied July 3, 1968.

Russell E. Schlorff, Houston, Tex., for appellant Arthur B. Winter.

Francis J. Hone, New York City, (Brumbaugh, Free, Graves & Donohue, New York City, of counsel) for appellant Maurice P. Lebourg.

John S. Schneider, Houston, Tex., for appellees.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,* Judges.

ALMOND, Judge.

These are appeals by the two losing parties of a three-party interference. The Board of Patent Interferences awarded priority to Arendt, senior party in the interference, on the ground that neither junior party could overcome Arendt's filing date.

The invention is a method of perforating a pipe string in a well bore without perforating other strings in the same bore. It involves lowering into the string a perforating gun combined with a device capable of sensing the radial position of other tubing strings, such as a directional gamma-ray well logging tool. The device is rotated in the string until the gun is pointing away from the other tubing strings, and the gun is then fired. The single count reads:

1. A method of perforating in a well bore having a plurality of pipe strings arranged therein in side-by-side relationship comprising the steps of: arranging in one of said pipe strings a rotatable tool provided with a perforator having a selected radial direction of perforation and with pipe locator means having a selected radial direction of pipe detection fixed relative to said direction of perforation and capable of locating the radial position of at least one other of said pipe strings relative to a selected angular position of said tool; orienting said tool to a desired radial direction of perforation as determined by said locator means; and actuating said perforator.

The Arendt application is assigned to Arendt's employer, Humble Oil & Refining Co., the Winter one to Dresser Industries, whose subsidiary Lane-Wells Co. was his employer, and the Lebourg one to his employer, Schlumberger Well Surveying Corporation. In 1958 the parties and witnesses were familiar, through the activities of Humble, Lane-Wells and Schlumberger, with methods of completing oil wells by a then conventional method involving setting a string of tubular production casing in the well borehole, filling the annular space between the outside of the casing and the borehole with cement, and firing perforating guns through the casing and cement at spaced locations to establish the flow of petroleum.

In 1958, Humble pioneered a completion technique in which two or more parallel strings of tubing were lowered into a single borehole and cemented in position, these strings being thereafter perforated at different levels to establish

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

flow from one level into one string and from other levels into others. This procedure was called the "multiple tubing-less completion" technique, and care was required in its practice to avoid simultaneous perforation of more than one string at a given level. In the early stages of the development, such undesired simultaneous perforation was avoided by rigid securement of the casing strings during insertion and mechanical orientation of the gun within the string to be perforated, so that the perforation direction was away from the other string or strings.

As early as April 1958, Arendt became dissatisfied with this method of controlling the orientation of the gun and proposed in a patent disclosure substitution of a method in which the necessary information to enable the operator to fire the gun away from the other tubing strings would be obtained electronically. Humble was a customer of Schlumberger in this line of activity, and Schlumberger had designed for Humble's use the mechanically oriented devices used in the early stages of the development. In a letter dated August 8, 1958, Lebourg explained to his official superior in the Schlumberger organization, Mr. Andre Blanchard, that he had conferred with Humble engineers, at their request, to discuss a desire on the part of Humble that Schlumberger develop such an electronic tool. It is clear from Lebourg's record that his subsequent conceptions and developments stem from this initial suggestion. It is also clear that the conception and development of Winter stem from a related suggestion made by a Humble representative, James Rike, to a Lane-Wells representative, Floyd O. Bohn, in August 1958. Almost immediately after receiving these suggestions, Lebourg and Winter conceived and documented the methods on which they rely for priority in this interference.

The following dates were alleged in the preliminary statements:

|  | Lebourg | Winter | Arendt |
|---|---|---|---|
| First Drawing | Aug. 1, 1958 | Aug. 7, 1958 | April 22, 1958 |
| First Written Description | Aug. 1, 1958 | Aug. 7, 1958 | April 30, 1958 |
| Disclosure to Others | Aug. 1, 1958 | Aug. 8, 1958 | April 1, 1958 |
| Reduction to Practice | Dec. 15, 1958 | Sept. 12, 1958 | None prior to application |
| Diligence From | Aug. 1, 1958 | Aug. 14, 1958 | April 1, 1958 |
| Application Filed | Sept. 4, 1959 | Mar. 24, 1959 | Dec. 15, 1958 |
| Prior Application Claimed | Feb. 24, 1959 S. N. 795,099 |  |  |

### Lebourg v. Arendt

We will first consider whether Lebourg, as the last of the three to file his application, is entitled to priority over Arendt, the first to file. It will be noted that Lebourg alleged an actual reduction to practice on December 15, 1958, the exact day on which the Arendt application was filed.

Prior to opening of the preliminary statements, but after being advised of Arendt's filing date, Lebourg moved to amend his statement in order to rely upon an alleged reduction to practice on November 14, 1958. The motion stated that:

* * * the date for the reduction to practice as set forth in the original

preliminary statement was, through inadvertence and mistake and without negligence, based upon a mistake of fact and incomplete evidence which erroneously indicated that the first reduction to practice occurred on or about December 15, 1958 and that prompt action has been taken following the discovery of the error.

The Board of Interferences, noting that the same issue had been presented in an earlier interference between Lebourg and one Brumble, another Humble assignor, stated:

> We next consider two issues which are also closely related to those of Interference 92,664. In that interference, after asserting in his original Preliminary Statement a date of reduction to practice of Dec. 15, 1958, i. e. the very date of filing of Brumble's patent application, Lebourg moved to amend that statement to assert a date of Nov. 14, 1958. In this interference, which involves an application of Arendt also filed on Lebourg's originally asserted reduction to practice date of Dec. 15, 1958, Lebourg has similarly moved to amend his Preliminary Statement to assert a date of Nov. 14, 1958. This motion to amend was made (Paper 32) after Lebourg had been advised (Paper 9) of Arendt's filing date, and was based upon discovery in the notebook of the attorney who prepared the Preliminary Statement of information leading him to conclude that a test he attended on Nov. 14, 1958 involved the presence of a perforating gun and was hence, in his judgment, a reduction to practice. We held in interference 92,664 * * that the evidence did not prove that Lebourg had reduced the invention to practice on Nov. 14, 1958, as averred in the amended statement, and that the support for the motion to amend was inadequate in that it was apparent that the original statement was prepared without careful investigation. These same two factors are applicable in the present interference and the

motion to amend is accordingly denied. The language of Commissioner Allen is applicable to this situation, viz. (Friestedt v. Harold, 1905 C.D. 161, 116 O.G. 594):

> "If amendment were permitted under circumstances like those here presented, the rule requiring that preliminary statements be made in ignorance of the dates of the opposing party would be virtually abrogated." (See also McCullough v. Watkins, 1875 C.D. 129, and Ducas v. Seymour, 1927 C.D. 78, 364 O.G. 3.)

Lebourg argues that the board erred in denying his motion to amend. He claims that omission of the allegation of reduction to practice on November 14, 1958 arose through inadvertence, even though the preparation of the preliminary statement involved a careful and thorough search of records and interview of the parties involved, and that amendment should be permitted under such circumstances.

The record shows that the patent lawyer who prepared the preliminary statement was himself a witness to the alleged reduction to practice on November 14, 1958, and made an entry in his diary to that effect. However, in preparing the preliminary statement he did not consult his diary. His search of other company records and interviews with other witnesses led him to believe that December 15, not November 14, was the date of the reduction to practice.

The problem of amendment of preliminary statements is discussed in Rivise and Caesar, "Interference Law and Practice" (1940) § 99:

> Generally speaking, if an amended statement is presented before the original statements are approved, the amended statement will be accepted without question. For until the statements are approved, *the parties are in ignorance of each other's filing dates,* unless of course one of the parties is a patentee. * * * [Emphasis added.]

As noted above, however, Lebourg was notified of Arendt's filing date, and therefore at the time Lebourg filed his amended preliminary statement, he was aware that Arendt's filing date was December 15, 1958.

The burden placed upon a person who wishes to amend his preliminary statement after learning of his opponent's filing date is discussed in Rivise and Caesar, supra, § 100:

A party, who wishes to amend his preliminary statement after the statements have been approved, must present a motion to the Examiner of Interferences requesting permission to file an amended statement. The motion papers must be served upon the other parties to the interference, and must be accompanied by the proposed amended statement together with a satisfactory showing that the party was not negligent in preparing the original statement and that the error could not have been avoided by the exercise of due care. If the amendment is based upon newly discovered evidence, the motion should clearly set out the specific nature of the new evidence as well as all the circumstances resulting in its discovery, so that the Examiner of Interferences can judge for himself whether the evidence could have been discovered earlier by the exercise of reasonable care. The motion should also satisfactorily explain any delay that may have occurred after the need for the amendment became evident. All statments as to fact in the motion should be verified by the affidavits of persons having personal knowledge thereof.

As was stated in Borg v. Strauss, 1907 C.D. 320; 130 O.G. 2719:

" * * * Amendments to preliminary statements are to be permitted after a party has had an opportunity to inspect his opponent's case only in cases where *bona fide* mistakes of fact have been made and a full and clear showing is made that there was no negligence in discovering the true facts."

Several cases are summarized by Rivise and Caesar in § 101 as illustrations of unsatisfactory showings. Two are of particular interest in this case:

Ducas v. Seymour, 1927 C.D. 78; 364 O.G. 3.

Ducas, after he learned Seymour's filing date and found that it was several months prior to the dates alleged in his own preliminary statement, presented a motion to amend his statement. In support of his motion, he averred that he had failed to remember a certain conversation with one of his witnesses, and as a result he became confused in his mind as to two sets of devices which bore some suggestion to the device of the invention. In denying the motion, The Commissioner stated:

" * * * There is no showing that if the same degree of effort and care exercised after Ducas learned of Seymour's date of filing had been exercised when Ducas first prepared his preliminary statement he would not have been able to have obtained the information regarding the earlier date of conception which he now seeks to set up in the amended preliminary statement.

" * * * The party Ducas, according to the statements of his counsel, was fully informed and cautioned as to the necessity for care and diligence in the preparation of the original preliminary statement. It must be held, therefore, that the mere later recollection of matters which should have been recalled at an earlier date can not be deemed to furnish a sufficient basis for the granting of the motion to amend the preliminary statement at this time."

Maple v. Cook, 1929 C.D. 12; 380 O.G. 3.

A motion by Maple for permission to amend his preliminary statement after he had learned Cook's dates were [sic] denied, because Maple admittedly did

not make as diligent a search of his records as he should have made while preparing the original statement. In his decision, the Commissioner stated:

"* * * Applicants should exercise the same care in preparing their preliminary statements that they exercise in discovering evidence after they learn the dates alleged by their opponents. Fowler v. Boyce v. Temple et al., 108 O.G. 561. Had such a degree of care been exercised by Maple in the present case, he probably would have found the alleged newly-discovered evidence and had it available for preparing the original preliminary statement."

The facts present in this case led the Board of Interferences to conclude "that the original statement was prepared without careful investigation," and it therefore denied the motion to amend.

■ The question of the right to amend a preliminary statement is a matter within the discretion of the Patent Office, and this court will not disturb a decision of the Board of Interferences unless there is a clear abuse of discretion. Holslag v. Steinert, 143 F.2d 661, 31 CCPA 1116. On the facts presented in this record, we cannot say that there was any abuse of discretion in denying the motion.

■ Lebourg must therefore rely upon the date alleged in his preliminary statement as his earliest reduction to practice and cannot be given the benefit of an earlier date, even if proved. Biel v. Chessin, 347 F.2d 898, 52 CCPA 1607.

The alleged reduction to practice on December 15, 1958 was an attempted test of a pipe locator device in a 1,000-foot well. However, equipment malfunction was encountered, as described in the testimony of a radioactivity laboratory technician who was to have operated the detector equipment:

XQ5. Do you recall a test that occurred on December 15th, 1958? A. Yes, sir.

XQ6. Will you give us the result of that test? A. Well, there weren't any

results except that the equipment that didn't work. And it was my equipment that didn't work in the test; and, therefore, we didn't get any usable results. The radioactive panel on the uphole equipment was not working on that date.

XQ7. On the December 16th test, was that carried out the same way, with the same procedure that the December 15th test was carried out? A. Well, the December 15th test we did not get any information, and didn't carry out my procedure because my equipment didn't work.

And on the 16th we did what we were going to do on the 15th. And with equipment that worked.

■ In view of this testimony, corroborated by the other witnesses present, the Board of Interferences correctly concluded:

It [the invention] was quite obviously not reduced to practice in the test of Dec. 15, 1958, for that test was considered a failure by all witnesses.

■ Since Lebourg has not proven a reduction to practice prior to or even on the same date as Arendt's filing date, he is not entitled to an award of priority over Arendt. This holding makes it unnecessary for us to consider the issue of whether the device tested by Lebourg was within the count of the interference.

### Winter v. Arendt

Winter alleges conception August 7, 1958 and an actual reduction to practice on September 12, 1958. The Board of Interferences held that he had proved that he was in possession of the conception of the invention before the end of August 1958, but provided no proof of continuing activity in reducing the invention to practice from a date prior to Arendt's filing date. His claim to priority therefore rests solely upon his contention that he made an actual reduction to practice on September 12, 1958.

The alleged reduction to practice was in the nature of a laboratory bench test utilizing two pipe lengths immersed in

a 55-gallon drum of wet sand. Since the tubing used was of the same size as that used in wells, and was spaced at the same spacing normally encountered in a well bore, and since the density of the sand was close to that of the cement used in wells, Winter's witnesses felt that they had duplicated the actual operating conditions in a well bore.

Having thus prepared a simulated well bore, Winter's associates modified a gamma-ray well logging tool to provide a collimated source and aligned collimated detector. This modified tool was the device with which the alleged reduction to practice was accomplished. There was no perforator associated with the tool, nor was there any means provided for rotation of the tool.

Winter's bench test consisted of manually rotating the tool in one pipe and determining the amount of radiation sensed by the detector. By correlating visual observations of the position of the tool with detector readings, the witnesses concluded that they could locate a tubing by the magnitude of the detector reading.

The board felt that this bench test was inadequate, stating:

> The tests proved that the proper position of rotation of the tool carrying the gamma ray log could be determined in this way; however no perforation was accomplished and no tool for accomplishing such perforation was present; in fact the whole purpose of the experiment was to determine whether the proper relative positions could be established by manual rotation of the gamma log in this environment. The adaptation of a gun for this purpose and the development of electronic portions of the tool were the subjects of subsequent projects * * *, and it was not until a year later that a tool was available for field test of the entire process * * *.

This interference is directed to a process of perforating a pipe, and we do not consider that it was successfully reduced to practice by a test establishing merely that one pipe could be located by means of a tool within another; if that was Winter's interpretation he should have moved to amend the interference by substituting a count defining only this step (Rule 233). Clearly he has not provided a demonstration of the combination of steps required by the interference count.

Winter has appealed this holding of the board, arguing that since the perforator and its actuation were old and commonplace in the art, the one and only problem to be solved was that of locating the other pipe string. Having successfully done that, and having presented evidence that persons skilled in the art considered the test to prove the operability of the method, Winter maintains that he made an adequate reduction to practice of the invention defined in the count.

■ The adequacy of an actual reduction to practice is to be tested by what one of ordinary skill in the art would conclude from the results of the tests. In re Hartop, 311 F.2d 249, 50 CCPA 780. The question facing us, therefore, is whether the tests conducted by Winter would persuade one skilled in the art that the method defined by the count of the interference is operable as alleged, not whether merely part of the method is operable.

■ It is apparent to us that the tests were not so adequate. While Winter clearly proved his ability to locate another pipe, he did not demonstrate his ability on that date to carry out the complete method of perforating. His own testimony showed that more work needed to be done before he had an operable well-perforating system:

> Q73. Were any other steps taken after this, then? A. Yes. We obtained approval to spend some money to build an actual tool for the field, and the project was set up to *develop the electronic portions* of this tool. Another project was set up to *adapt a gun* for this use, and those programs went right ahead immediately after this test. [Emphasis added.]

\* \* \* \* \* \*

XQ29. You testified that you obtained approval to build an *actual tool*, is that correct? A. Yes, that is correct. I obtained the permission to spend the money to build a tool.

XQ30. Was a tool ever built? A. Yes, a tool was built.

Even more work was shown to be necessary by Mr. Bohn, a mechanical engineer for Lane-Wells:

RDQ5. As a result of the tests, which were performed by Mr. Wilson and Mr. Farnsworth for Mr. Winter, which are shown on Exhibit 2, you went ahead with a project to develop a commercial perforator? A. Yes, I went ahead, wrote specifications for the device, put it into the engineering section with the approval of the management, and *proceeded to develop, build and acquire a rotator* for this assembly.

RDQ6. However, before you had seen the results of the tests, you did not go ahead with any of this project? A. No. [Emphasis added.]

From this testimony it can only be concluded that Winter could not have actually perforated a well on September 12, 1958 because he lacked means to rotate the device in the well bore; he lacked the electronic portions of the tool; and he lacked a gun adapted to be used in conjunction with the locating device. Even though development of these elements may have represented no more than routine engineering tasks, the fact nonetheless remains that Winter was incapable of perforating a well bore on September 12, 1958, and in fact did not even have so much as a small scale working model of a device which would perforate.

We, therefore, hold that Winter failed to demonstrate an actual reduction to practice prior to Arendt's filing date and is not entitled to an award of priority.

In view of our holding that neither junior party can overcome Arendt's filing date, we find it unnecessary to consider the attacks made by the junior parties on Arendt's conception date.

 Appellant Lebourg has asked this court to charge appellee Arendt for the cost of printing certain additions to the record added by motion of Arendt. The assessing of costs in such circumstances is discretionary as provided by Rule 13 of the court. The bulk of the material added to the record by Arendt seems to be reasonably necessary to the full and complete presentation of his case, and the request of Lebourg is accordingly denied.

The decision of the Board of Interferences is affirmed.

Affirmed.

SMITH, J., concurs in the result.