**SLIP TRACK SYSTEMS, INC. and Todd A. Brady, Plaintiffs–Appellants,**

v.

**METAL–LITE, INC., Thomas R. Herren, and Gene N. Carpenter, Defendants–Cross Appellants.**

Nos. 01–1187, 01–1196.

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 11, 2002.

————

R. Joseph Trojan, Trojan Law Offices, of Beverly Hills, CA, argued for plaintiffs-appellants. Of counsel were Joyce E. Crucillo; and Paul Grandinetti, Levy & Grandinetti, of Washington, DC.

Mark H. Plager, Law Offices of Mark H. Plager, of Placentia, CA, argued for defendants-cross appellants.

Before SCHALL, BRYSON and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

The parties in this case own interfering patents that teach a slotted header that prevents dry wall from cracking during earthquakes by permitting the wallboard to move up and down. Plaintiff–Appellant Slip Track Systems, Inc. ("Slip Track") owns U.S. Patent No. 5,127,760 ("the '760 patent") and Defendant–Cross–Appellant Metal–Lite Inc. ("Metal–Lite") owns[1] U.S. Patent No. 5,127,203 ("the '203 patent"). Slip Track appeals the judgment of the United States District Court for the Central District of California granting Metal–Lite priority of invention. *Slip Track Sys., Inc. v. Metal–Lite, Inc.*, No. 98–20 (C.D.Cal. Jan. 24, 2001) (*"Final Judgment"*). Metal–Lite cross-appeals the district court's dismissal of its cross-complaint for infringement and denial of leave to amend the complaint. We vacate the grant of summary judgment of priority and remand. We also reverse the dismissal of the cross-complaint and affirm the denial of leave to amend the complaint.

## BACKGROUND

Slip Track filed a complaint to institute an interference proceeding in district court pursuant to 35 U.S.C. § 291. The parties did not dispute that the patents interfered. The application that led to the '203 patent was filed on February 9, 1990. Claim 1 of the '203 patent states:

1. In a seismic/fire resistant wall structure installed between a floor and a[sic] overhead structural member:

An elongated channel member and a pair of side flanges depending from the base and defining a downwardly opening channel;

A layer of fire retardant material extending along the base within the channel;

A plurality of vertically extending slotted openings in the side flanges at spaced intervals along the length of the channel member;

A plurality of studs extending vertically between the floor and the channel member with upper portions of the studs extending into the channel in alignment with the slotted openings;

fasteners passing through the slotted openings and into the studs to anchor the upper portions of the studs against horizontal movement but permitting relative vertical movement between the channel member and the studs; and

fire retardant wallboard mounted on the studs and extending from the floor to the channel member.

'203 patent, col. 3, ll. 22–43. The application that led to the '760 patent was filed on July 26, 1990. Claim 1 of the '760 patent states:

1. A building construction assembly that includes a header and a stud where-

---

1. Whether Metal–Lite is sole owner of the '203 patent is the subject of dispute.

in the header is capable of vertical movement relative to said assembly comprising:

a header having a web and flanges with said flanges connected to said web;

at least one of said flanges having at least one vertical slot therein;

a stud having a width less than the distance between said flanges of said header and having a top end;

said stud having at least one hole formed therein proximal to said top end;

said top end fitting between said flanges perpendicular to said header positioned so that said hole is aligned with said vertical slot; and

an attachment means passing through said slot and through said hole to slideably unite said header to said stud whereby said slot permits said header to move vertically with respect to said stud while restricting horizontal movement of said header.

'760 patent, col. 4, ll. 35–54.

Before the district court, Slip Track presented documentary evidence that it had conceived the invention in September of 1989. Slip Track contended that it had reduced the invention to practice in October of 1989, when its inventor created its first prototype, made of cardboard ("First Prototype"). Slip Track presented evidence that one skilled in the art who saw the First Prototype would know that the invention worked. While Metal–Lite challenged this assertion, it did not present contrary testimony. Slip Track also attempted to prove, in the alternative, that its inventor had constructed a full metal wall assembly in December of 1989 ("Second Prototype"). Metal–Lite asserted that this evidence was insufficient because it was based solely on inventor testimony and was not corroborated. Metal–Lite re-

lied on its filing date of February 9, 1990 for constructive reduction to practice.

In a tentative ruling on summary judgment motions, the district court found that the patents were interfering and that the inventor of Slip Track's '760 patent, Mr. Brady, conceived the invention on September 18, 1989, while the inventor of Metal–Lite's '203 patent, Mr. Paquette, conceived of the invention between October 11 and 14, 1989. *Slip Track Sys., Inc. v. Metal–Lite, Inc.*, No. 98–20, slip op. at 2 (C.D.Cal. Mar. 8, 1999) ("*Tentative Priority Ruling*"). In the same ruling, the district court found that Slip Track had not reduced the invention to practice before Metal–Lite's February 9, 1990 reduction to practice date. *Id.* at 2–3. In a subsequent order, the district court ruled in accordance with its tentative rulings, awarding priority to Metal–Lite's '203 patent and granting Metal–Lite partial summary judgment. *Slip Track Sys., Inc. v. Metal–Lite, Inc.*, No. 98–20, slip op. at 1–2 (C.D.Cal. July 13, 1999) ("*Partial Summary Judgment*").

Slip Track appeals the district court's determination of priority. In its analysis, the district court incorrectly applied a clear and convincing evidence standard instead of a preponderance of the evidence standard in determining priority. It is undisputed that the district court applied the wrong standard of proof in determining whether Slip Track had reduced the invention to practice prior to Metal–Lite. The parties do dispute, however, whether or not this misapplication was harmless error.

Metal–Lite has filed a cross-appeal concerning two additional issues. First, Metal–Lite asserts that the district court abused its discretion when it denied Metal–Lite's motion to amend its answer and cross-complaint to allege claims of patent unenforceability and unclean hands. On

January 25, 1999, the district court issued a scheduling order that required all motions to amend the pleadings to be filed within 60 days. It also provided that discovery conclude on September 30, 1999. During discovery Metal–Lite sought evidence to corroborate its potential claim of fraud on the PTO, and claims to have found it when it deposed the inventor of the prior art, Mr. Gilmour, on September 22, 1999. According to Metal–Lite this was the first time that there was sufficient evidence to assert such a claim. The district court denied that motion. Second, Metal–Lite appeals the district court's ruling that Metal–Lite is collaterally estopped from asserting a claim of patent infringement against Slip Track based on a judgment of the California Superior Court in *Brady v. Herren*, No. 771130 (Cal.Super.Ct.1999), which found that Slip Track shares a 50% ownership in the '203 patent as a result of a partnership between the parties. *Final Judgment*, slip op. at 2–3.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

This court reviews a grant of summary judgment *de novo*, drawing all reasonable inferences in favor of the non-movant and reapplying the standards used by the district court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Priority, conception, and reduction to practice are questions of law based on subsidiary factual findings. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327, 47 USPQ2d 1896, 1901 (Fed.Cir.1998). This court reviews the ultimate issues of conception and reduction to practice *de novo*. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376, 231 USPQ 81, 87 (Fed. Cir.1986). Junior applicants in an administrative proceeding must establish prior invention by a preponderance of the evidence and the burden is the same in district court. *Environ Prods., Inc. v. Furon Co.*, 215 F.3d 1261, 1265, 55 USPQ2d 1038, 1041–42 (Fed.Cir.2000).

We review a district court's denial of a request to modify a pre-trial order under the law of the regional circuit, because it is a procedural issue not pertaining to the patent laws. *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75, 223 USPQ 465, 472 (Fed. Cir.1984) ("When we review procedural matters that do not pertain to patent issues, we sit as if we were the particular regional circuit court where appeals for the district court we are reviewing would normally lie. We would adjudicate the rights of the parties in accordance with the applicable regional circuit law."). The applicable regional circuit in this case is the Ninth Circuit, which reviews a denial of a request to modify the pre-trial order for an abuse of discretion. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 606 (9th Cir.1992).

This court also applies regional circuit law to the application of collateral estoppel. *See Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 1345, 61 USPQ2d 1675, 1679 (Fed.Cir.2002). The Ninth Circuit has held that the availability of collateral estoppel is a mixed question of law and fact reviewed *de novo* by the appellate court. *Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir.1986). Federal courts must give state court judgments full faith and credit by applying the preclusion law of the rendering state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

## DISCUSSION

### I. Priority

#### A. Conception

Conception is the formulation of a definite and permanent idea of the com-

plete and operative invention as it is hereafter to be applied in practice. *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228, 32 USPQ2d 1915, 1919 (Fed. Cir.1994). Conception must include every feature or limitation of the claimed invention. *Kridl v. McCormick*, 105 F.3d 1446, 1449, 41 USPQ2d 1686, 1689 (Fed.Cir. 1997). It turns on the inventor's ability to describe the invention with particularity, and the idea must be sufficiently formed so that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation. *Burroughs*, 40 F.3d at 1228, 32 USPQ2d at 1919. Inventor testimony alone is insufficient to prove conception; some form of corroboration must be shown. *Price v. Symsek*, 988 F.2d 1187, 1194, 26 USPQ2d 1031, 1036–37 (Fed.Cir.1993).

 The district court concluded that Slip Track had conceived the invention as of September 18, 1989. *Tentative Priority Ruling*, slip op. at 2; *Partial Summary Judgment*, slip op. at 1–2. Metal–Lite challenges that finding, asserting that the claim of conception is insufficient as a matter of law because the inventor's claim of conception was not corroborated as required by *Price*. *See Price*, 988 F.2d at 1194, 26 USPQ2d at 1036–37. In its assertion of the conception date, however, Slip Track does not rely solely on inventor testimony. Rather, it primarily relies on a set of drawings that Mr. Harris drew for Mr. Brady on September 18 and 20, 1989. These drawings indicate how the header allows the wallboard to move freely. Corroboration, while necessary when inventor testimony is relied on for conception, is not a requisite when a physical exhibit is presented as evidence of conception. *Id.* at 1195, 26 USPQ2d at 1037 ("Unlike a situation where an inventor is proffering oral testimony attempting to remember specifically what was conceived and when it was conceived, a situation where, over time, honest witnesses can convince themselves that they conceived the invention of a valuable patent, 'corroboration' is not necessary to establish what a physical exhibit before the board includes." (citation omitted)).

Metal–Lite also contends that there is no evidence that each and every element of the claimed invention was disclosed by Mr. Brady prior to Metal–Lite's October 11–14, 1989 conception date. The drawings, Metal–Lite argues, are not sufficiently detailed in their description of the invention and do not show each and every element of the invention because the wallboard is not shown. In response, Slip Track asserts that the wallboard is not a claim limitation, but rather is in the specification, and therefore Metal–Lite is inappropriately importing limitations from the specification. These arguments are repeated in the context of reduction to practice. We will discuss them at this time.

 At the crux of the parties' dispute is really the description of the interfering subject matter in this case. Most interferences arise in the PTO, involve an interference between two applications or an application and one or more patents, and begin with the creation of a "count." The count defines the interfering subject matter and corresponds to a patentable invention. 37 C.F.R. § 1.601(f) (2001). The count may be identical to a single claim at issue or may be broader than the particular claims at issue. *Id.* This case, however, is one of a handful where the interference is between issued patents and arises in district court, where PTO procedures do not govern. Nonetheless, in order to provoke an interference in district court under § 291, the interfering patents must have the same or substantially the same subject matter in similar form as that required by the PTO pursuant to 35 U.S.C. § 135.

This court has not yet had occasion to determine whether district courts handling interfering patent suits under § 291 must define this interfering subject matter in a way similar to a count.[2] In *Environ Products, Inc. v. Furon Co.*, involving a § 291 interference, this court explained that "[t]he parties and the court agreed on the description of the common subject matter that would serve as the basis for determining who was the original inventor," and then cited to the description of that subject matter that was provided to the jury. 215 F.3d 1261, 1263, 55 USPQ2d 1038, 1039–40 (Fed.Cir.2000). Thus in *Environ* this court did not need to address this question. In *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 58 USPQ2d 1030 (Fed.Cir.2001), this court faced a similar problem in attempting to determine what, in fact, had to be reduced to practice, where there was a priority dispute about whether Monsanto's inventors had first reduced to practice the claimed subject matter of two of Mycogen's patents. *Id.* at 1331–33, 243 F.3d 1316, 58 USPQ2d at 1042–43. The court there distinguished the situation from one arising under § 135 before the PTO, or one arising under § 291 before a district court. It explained:

> This case before us does not fall into either category. It is not an appeal of a section 135 interference proceeding, and it does not involve a section 291 action. Instead, we are comparing two issued Mycogen patents, the '600 and '862 patents, with the work performed by Monsanto's scientists. *Without the benefit of written claims for the Monsanto efforts, it is difficult to develop a "count" encompassing both party's [sic] inventions, as would commonly be done in an interference proceeding.*
>
> In this situation, it is therefore appropriate to place the focus of inquiry upon the specific claims of the '600 and '862 patents as representing the invention at issue. There claims may then be used to determine whether or not the work performed by Monsanto constitutes a reduction to practice that meets the limitations of the claimed invention.

*Id.* at 1332–33, 58 USPQ2d at 1043 (emphasis added). Thus, the *Mycogen* court, highlighting the import of having a single textual description of the invention for the assessment of priority, assumed that even in district court proceedings under § 291 a description of the interfering subject matter analogous to a count would be developed. While we need not resolve this question in its entirety, it is necessary for us to hold that given interfering patents, a single description of the interfering subject matter is necessary for a determination of priority.

In this case the district court did not define the bounds of the interfering subject matter. There is no dispute that the patents interfere. As this court previously stated, "the PTO issued two patents for the same invention on the same day." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1338, 48 USPQ2d 1055, 1056 (Fed.Cir.1998). There is only a dis-

---

**2.** The 1952 Patent Act amended interference law to significantly diminish the likelihood of interfering patents being issued, causing commentator and principal drafter of the 1952 Patent Act, P.J. Federico, to opine that "the ... occasion for interfering patents will no longer arise, and there will be little or no use for section 291." P.J. Federico, "Commentary on the New Patent Act" 35 U.S.C.A. 1, 57 (West 1954). He appears to have been correct, *see Albert v. Kevex Corp.*, 729 F.2d 757, 761, 221 USPQ 202, 206 (Fed.Cir.1984), this case being exceptional because "the PTO issued two patents for the same invention on the same day," *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1338, 48 USPQ2d 1055, 1056 (Fed.Cir.1998).

pute about whether the interfering subject matter includes the wallboard limitation. As the parties in this case dispute only whether one limitation is part of the interfering subject matter, and determination of this issue is dependent upon issues of law alone, we will resolve this issue on appeal.

■ As with a count in the administrative interference process before the PTO, the description of interfering subject matter must be broad enough to encompass the common subject matter of the claims in both patents, in this case, the claims of the '760 patent and the claims of the '203 patent.[3] This court held in *Advance Transformer Co. v. Levinson*, 837 F.2d 1081, 5 USPQ2d 1600 (Fed.Cir.1988), that "interfering patents are patents that claim the same subject matter," and "[i]t is thus correct, and necessary, to compare claims, not disclosures, when comparing issued patents under section 291." *Id.* at 1083, 5 USPQ2d at 1602. Since the claims of the '760 patent do not include a wallboard, and under *Advance Transformer*, the specification is not relevant to the determination of an interference, the wallboard cannot be an element of the interfering subject matter in this case, even though it is a limitation in the claims of the '203 patent.

In sum, we agree with the district court that Slip Track is entitled to a conception date of September 18, 1989. The drawings that Mr. Harris made for Mr. Brady indicate that they had at that time a definite and permanent idea of the invention.

### B. Reduction to Practice

■ The parties dispute whether it was harmless error for the district court to apply the incorrect burden of proof in its analysis of the reduction to practice issue. Slip Track asserts that applying the wrong standard of proof is rarely harmless error, citing *Pullman–Standard v. Swint*, 456 U.S. 273, 291–92, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), but both parties correctly recognize that because this court reviews *de novo* a grant of summary judgment, it can apply the correct standard and either remand, affirm, or reverse.

■ In order to establish actual reduction to practice, the inventor must prove that he constructed an embodiment or performed a process that met all the limitations of the claim, and that he determined that the invention would work for its intended purpose. *Cooper*, 154 F.3d at 1327, 47 USPQ2d at 1901. Determining that the invention will work for its intended purpose may require testing, depending on the character of the invention and the problem that it solves. *Id.* "Some devices are so simple and their purpose and efficacy so obvious that their complete construction is sufficient to demonstrate their workability." *Eastern Rotorcraft Corp. v. United States*, 181 Ct.Cl. 299, 384 F.2d 429, 431, 155 USPQ 729, 730 (1967); *accord King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 861, 226 USPQ 402, 407 (Fed.Cir.1985). "The adequacy of a reduction to practice is to be tested by what one of ordinary skill in the art would conclude from the results of the tests." *Winter v. Lebourg*, 55 C.C.P.A. 1212, 394 F.2d 575, 581, 157 USPQ 574, 578 (CCPA 1968). To prove reduction to practice by inventor testimony, the inventor's testimony must be corroborated by independent evidence. *See Cooper*, 154 F.3d at 1330, 47 USPQ2d at 1903.[4]

3. We need not address whether there are separate patentable inventions in this case so as to warrant multiple descriptions of interfering subject matter, as the parties dispute only whether the wallboard is a limitation in the interference.

4. Even if Slip Track was not the first party to reduce the invention to practice, it may still

Slip Track asserts that the district court erred in finding that neither of the two prototypes constituted a reduction to practice. Slip Track highlights the fact that the uncontroverted testimony in the record by those skilled in the art is that based on the prototypes, one would know that the invention would work for its intended purpose. Slip Track argues that the district court could not reject this uncontroverted testimony on summary judgment, where it is required to draw all reasonable inferences in favor of the non-moving party.

### 1. The First Prototype

■ Slip Track contends that there was sufficient evidence of reduction to practice of the First Prototype to withstand summary judgment. Slip Track's expert, Mr. Harris, testified that the First Prototype was a reduction to practice and that it would work if made out of steel and wallboard. He indicated that he could use the model to construct the invention and use it in a building. Another Slip Track witness with six years of wall building experience, Mr. Kim, said that when he saw the First Prototype he knew that the invention would work for its intended purpose and that it did not matter that it was made of cardboard. Slip Track argues that because reduction to practice is a question of law with factual underpinnings based on what one of ordinary skill in the art would think, the district court should not have rejected the uncontroverted expert testimony and replaced it with its own view.

Metal–Lite argues that Slip Track did not make a prima facie showing that the First Prototype was a reduction to practice. Metal–Lite claims that neither prong of the reduction to practice test was met,

asserting both that the First Prototype did not include all of the limitations of the claimed invention, and that there was insufficient evidence in the record that the invention would work for its intended purpose because the First Prototype was not made of the right materials and it was never tested to see if it would work. In addition, Metal–Lite claims that the expert testimony was not from one of skill in the art. Metal–Lite's argument that the First Prototype did not include all of the limitations of the claimed invention rests on its assertion that the wallboard is a limitation in the interfering subject matter. Having already decided that the wallboard is not a limitation of the interfering subject matter, we need not further address this argument.

■ As to the question of Slip Track's experts, Metal–Lite argues that the evidence that Slip Track did put in the record regarding the intended purpose is not relevant because Mr. Harris and Mr. Kim, who testified on behalf of Slip Track, are not experts in the field. Metal–Lite argues that while they are experts in installing drywall, they need to be engineers in order to be skilled in the art of withstanding seismic forces. We do not agree that their testimony is not probative to this issue. As Slip Track explains, Mr. Harris has 40 years of experience in the construction industry and has taught about wall construction and Mr. Kim had six years of wall building experience when he saw the First Prototype. With such experience in constructing walls, the testimony of Mr. Harris and Mr. Kim as to the stability of particular wall constructions is probative on summary judgment, particularly in light of the fact that Metal–Lite has presented no evidence that a formal engineering de-

---

be entitled to priority if it can show that it exercised reasonable diligence in reducing the invention to practice, because it was the first

party to conceive of the invention. *See Price,* 988 F.2d at 1190, 26 USPQ2d at 1033.

gree is required to be one of ordinary skill in this art.

### a. Intended Purpose

Metal–Lite asserts that the First Prototype could not have been a reduction to practice because first, there was not sufficient evidence that it would work for its intended purpose, second, the prototype was not made of the correct materials, and third, it was never tested. These latter two challenges, with respect to the materials and the testing, are both subsumed in the first challenge, the question of whether the prototype demonstrated that the invention would work for its intended purpose. Testing is required to demonstrate reduction to practice in some instances because without such testing there cannot be sufficient certainty that the invention will work for its intended purpose. *See Scott v. Finney*, 34 F.3d 1058, 1062–63, 32 USPQ2d 1115, 1119 (Fed.Cir.1994). Differences in materials are relevant for the same reasons: they diminish the inventor's ability to recognize whether the invention will work for its intended purpose. For the reasons we describe below, we remand these issues to the district court for consideration under the correct burden of proof and in light of this opinion.

### i. Testing

Metal–Lite argues that testing under actual working conditions was necessary to show reduction to practice of a wall assembly invention intended to withstand earthquakes. Slip Track argues that Metal–Lite presented no testimony that the invention would need to be tested for one skilled in the art to know that it would work for its intended purpose. Since there is no evidence refuting Slip Track's experts, Slip Track argues that this court cannot affirm the trial court's judgment and should even reverse and hold in favor of Slip Track.

We reiterate that testing is relevant in that it is evidence of whether the inventor would have known that an invention is suitable for its intended purpose. As one of this court's predecessors, the Court of Claims, explained, "the inquiry is not what kind of test was conducted, but whether the test conducted showed that the invention would work as intended in its contemplated use." *Eastern Rotorcraft*, 384 F.2d at 431, 155 USPQ at 730. In *Scott v. Finney*, this court explained that "the testing should demonstrate *'the soundness of the principles of operation* of the invention.' The inventor need show only that the invention is 'suitable' for its intended use." 34 F.3d at 1062–63, 32 USPQ2d at 1119 (citation omitted) (quoting *Wolter v. Belicka*, 56 C.C.P.A. 1399, 409 F.2d 255, 263, 161 USPQ 335, 341 (CCPA 1969) (Rich, J., dissenting), and *Steinberg v. Seitz*, 517 F.2d 1359, 1363, 186 USPQ 209, 212 (CCPA 1975) (quoting *In re Dardick*, 496 F.2d 1234, 1238, 181 USPQ 834, 837 (CCPA 1974))). In some cases, where the invention is particularly complicated, the absence of testing may be sufficient in and of itself to justify a grant of summary judgment denying priority for lack of reduction to practice. However, in a case where the necessity of such testing is more uncertain, as in this case, and where there is other uncontroverted evidence that the inventor would have known that the invention would work for its intended purpose, it is inappropriate to grant summary judgment on the basis of lack of testing alone, given the preponderance of the evidence standard. Testing is not itself a requisite for reduction to practice, although it may be a requisite for showing that a prototype demonstrates that an invention is suitable for its intended purpose.

In this case, the goal of the invention was to enhance the ability of walls to withstand environmental forces. The evidence in the record is ambiguous as to what one of ordinary skill in the art would have known about how walls can be improved to withstand such forces. Therefore, we leave to the fact finder the determination of whether testing was necessary to determine that giving the wallboard flexibility to move up and down would improve the stability of the wall, or whether the mere construction of the First Prototype, in and of itself, was enough to demonstrate to one of skill in the art that the invention would work for its intended purpose without any testing. *See King Instrument,* ·767 F.2d at 861, 226 USPQ at 407 ("Some devices are so simple and their purpose and efficacy so obvious that their complete construction is sufficient to demonstrate workability."); *Gordon v. Hubbard,* 52 C.C.P.A. 1598, 347 F.2d 1001, 1006, 146 USPQ 303, 307 (CCPA 1965) ("In instances where the invention is sufficiently simple, mere construction or synthesis of the subject matter may be sufficient to show that it will operate satisfactorily."); *In re Asahi/America, Inc.,* 68 F.3d 442, 446, 37 USPQ2d 1204, 1207 (Fed.Cir.1995) ("[M]ere construction of the restraint coupling is all that is necessary to constitute reduction to practice."). Therefore, in determining whether the inventor at the time the prototype was made would have known that the invention was suitable for its intended purpose, the finder of fact should consider the absence of testing and whether such testing was needed for such a determination.

### ii. The Material Change

Metal–Lite argues that the First Prototype could not have been a reduction to practice because the materials were very different and therefore the invention could not have been shown to work for its intended purpose. While the materials used in the First Prototype may have been fairly different from those used in the actual invention, it is necessary to repeat that such a deviation is relevant only to the extent that it indicates that the inventor could not, from the purported reduction to practice, have determined that the invention would work for its intended purpose. In *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 38 USPQ2d 1288 (Fed.Cir.1996), the inventor of catheters created prototypes of a different material in order to test his invention. · *Id.* at 1578, 38 USPQ2d at 1291–92. This court found that there had been a reduction to practice:

> [H]e also tested polyethylene prototypes and used them in flow and pressure drop tests in his kitchen. These tests used glycerine to simulate blood. These tests showed, to the limit of their design, the utility of his claimed invention. Dr. Mahurkar designed these tests to show the efficiency of his structure knowing that polyethylene catheters ' were too brittle for actual use with humans. But, he also knew that his invention would become suitable for its intended purpose by simple substitution of a soft, biocompatible material. Dr. Mahurkar adequately showed reduction to practice of his less complicated invention with tests which "[did] not duplicate all of the conditions of actual use."

*Id.* (quoting *Gordon v. Hubbard,* 52 C.C.P.A. 1598, 347 F.2d 1001, 1006, 146 USPQ 303, 307 (CCPA 1965)). Thus, the court concluded that the substitution of materials did not prevent the inventor from knowing that the invention would be suitable for· its intended purpose. The precise question is whether or not the embodiment made of different materials demonstrates that the invention would work for its intended purpose. In this case, there is sufficient evidence in favor of

Slip Track on the issue of intended purpose to support a remand of this question, in order for the district court to apply the correct burden of proof. In making this assessment on remand, the finder of fact should consider the impact of the deviations in materials. In addition, while we have held that the wallboard was not an element necessary to meet the first requirement for reduction to practice, the finder of fact may still consider the existence and material of the wallboard in determining whether one of skill in the art would have determined that the invention would work for its intended purpose upon a simple inspection of the prototype: in this case, to enable the wallboard to withstand environmental forces when placed in the header.

## 2. The Second Prototype

■ With respect to the Second Prototype, the district court held that there was insufficient corroborating evidence of the existence of a second prototype, and that if it did exist it was not sufficiently tested to demonstrate that it would work for its intended purpose. Slip Track challenges these conclusions, asserting that in addition to the inventor's declaration and deposition testimony that he made the prototype in December 1989, the record also includes an invoice dated December 14, 1989 for making the slotted track, a confidential disclosure agreement from December 22, 1989, photographs of the Second Prototype, and testimony from the person who made the slotted track, Mr. Benner, all of which corroborate the existence of the prototype. Slip Track claims that the invoice shows that the inventor attempted to license the invention about a week after picking up the slotted track. According to Slip Track, the prototype was delivered to the potential licensee when the confidential disclosure agreement was signed. Slip Track asserts that this is sufficient evidence of the existence of the Second Prototype for it to be entitled to a jury trial on the factual question of its existence.

Given that the wallboard is not a limitation of the interfering subject matter, it remains an open question whether or not the Second Prototype is a reduction to practice. Had the wallboard element been a limitation, the district court's ruling could have been affirmed on the basis of an absence of corroborating evidence as to when the Second Prototype, with all of the limitations, was completed. The invoice, confidential disclosure agreement, and photographs do not shed light on the question of when the wallboard was attached, and therefore there is no corroboration as to when the wallboard was added. However, the invoice for the construction of the slotted track and the testimony of Mr. Benner, who created the slotted track, may sufficiently corroborate the inventor's testimony as to when the Second Prototype met the actual limitations of the interfering subject matter, which do not require a wallboard. On remand, the district court should consider whether those features of the Second Prototype whose dates have been corroborated meet the limitations of the interfering subject matter. In addition, the district court should consider, in light of the guidance we have provided earlier in this opinion, whether there is sufficient evidence that the Second Prototype would be suitable for its intended purpose to withstand summary judgment.

## II. Amending the Pleadings

■ As the district court noted, before seeking leave to amend the complaint Metal–Lite had to move that the court modify the pre-trial scheduling order. The district court found that Metal–Lite had not shown good cause for modifying the scheduling order. Federal Rule of Civil Procedure 16(b) states that a scheduling order

shall not be modified except by leave of the court and upon a showing of good cause. Whether or not the requirements of Rule 16(b) have been met is a procedural issue not pertaining to the patent laws, and therefore regional circuit law applies to this question. *See Panduit Corp.*, 744 F.2d at 1574, 223 USPQ at 472 ("When we review procedural matters that do not pertain to patent issues, we sit as if we were the particular regional circuit court where appeals for the district court we are reviewing would normally lie. We would adjudicate the rights of the parties in accordance with that applicable regional circuit law."). The Ninth Circuit has held that good cause requires a showing that even with the exercise of due diligence the moving party could not meet the order's timetable. *See Johnson*, 975 F.2d at 609 ("Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' " (citing, *inter alia*, Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment))). A district court order denying a request to modify a pre-trial order is reviewed for an abuse of discretion. *Id.* at 606.

■ We see no basis for finding this to be an abuse of discretion in this case. Metal–Lite sought leave to amend to assert a claim of fraud on the Patent and Trademark Office. Metal–Lite claims that Slip Track did not disclose an important piece of prior art during the prosecution of the '760 patent. Although Metal–Lite admits that failure to cite a known prior art reference that is later identified by the patent examiner is not sufficient to support a claim of fraud on the PTO under 37 C.F.R. § 1.56(a), Metal–Lite asserts that that act coupled with Slip Track's additional affirmative misrepresentations in Mr. Brady's Rule 131 affidavit support a viable claim of fraud. Metal–Lite claims that the affidavit misrepresented its reduction to practice date and misrepresented Brenner's contribution to his invention in the Rule 131 affidavit, saying that he built the prototype. Metal–Lite claims that it was diligent, but that 60 days was insufficient time for it to meet the requirements necessary to assert a claim of fraud on the PTO, given that litigants are only supposed to raise inequitable conduct once they have established clear prima facie facts in support of it.

Slip Track highlights the fact that Metal–Lite admits that it knew the key facts relating to the alleged inequitable conduct earlier in the process but did not investigate the issues until 2 years later, because it was involved in the preliminary injunction and summary judgment motions. This is not "good cause" justifying an amendment of a scheduling order.

Metal–Lite has not met its burden of showing that the district court abused its discretion in not allowing it to amend the pre-trial schedule and the pleadings.

### III. Collateral Estoppel

■ Metal–Lite argues that the district court improperly dismissed Metal–Lite's cross-complaint of patent infringement, based upon a non-final decision of the California state trial court. Federal courts are required to apply the preclusion law of the rendering state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). If the proceedings of the state court comport with due process, then every federal court must afford the final judgment entered therein the same preclusive effect it

would be given in courts of that state. *Id.* Therefore in this case California law must apply to the collateral estoppel issue here. Under California law, a California Superior Court judgment is not final for purposes of collateral estoppel until final disposition on appeal. Cal.Civ.Proc.Code § 1049[5]; *Swaffield v. Universal Ecsco Corp.*, 271 Cal.App.2d 147, 159, 76 Cal.Rptr. 680 (1969) (interpreting § 1049).

On August 15, 2000, the district court determined that Metal–Lite's cross-complaint for infringement of the '203 patent was rendered moot by the California trial court's ruling on October 5, 1999 that Slip Track is a fifty percent owner of the '203 patent. Metal–Lite appealed the state court's judgment, and judgment has not yet been granted in the appeal. Therefore, the district improperly relied on the state court judgment for purposes of collateral estoppel. Metal–Lite's infringement claims should be reinstated and held in abeyance pending the outcome of its state court appeal.

### CONCLUSION

For the foregoing reasons, we vacate the grant of summary judgment granting priority to Metal–Lite, reverse the dismissal of the cross-complaint of infringement, affirm the denial of leave to amend the complaint, and remand for further proceedings not inconsistent with this opinion.

### COSTS

No costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED and REMANDED.*

---

5. California Code of Civil Procedure § 1049 states:

ACTIONS, WHEN DEEMED PENDING. An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied.