NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

(Serial No. 10/843,833)

**IN RE CHARLES CECCARELLI, STEVEN DELAPLAIN, AND AARON MARTIN**

---

2010-1054

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: November 19, 2010

---

DANA L. DREXLER, Michael P. Mazza, LLC of Glen Ellyn, Illinois, argued for appellants. With her on the brief was MICHAEL P. MAZZA.

RAYMOND T. CHEN, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the United States Patent and Trademark Office. With him on the brief were KRISTI L.R. SAWERT and FRANCES M. LYNCH, Associate Solicitors.

---

Before RADER, *Chief Judge*, and LOURIE, and MOORE, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* RADER, in which *Circuit Judge* LOURIE joins.

Dissenting opinion filed by *Circuit Judge* MOORE.

RADER, *Chief Judge*.

The Board of Patent Appeals and Interferences affirmed the Examiner's rejection of claims 1, 2, 5-15, and 17 as anticipated under 35 U.S.C. § 102(b) and claims 3, 4, and 16 as obvious under 35 U.S.C. § 103(a) of U.S. Patent Application No. 10/843,833 ("the application"). Because the sale at issue was experimental, not commercial, this court reverses.

I

The application, entitled "Side Puller Accessory Frame for a Car Carrier and for a Tow Truck," was filed on May 11, 2004 by Charles Ceccarelli, Steven Delaplain, and Aaron Martin (collectively, "Ceccarelli"), claiming benefit to a provisional application filed on May 15, 2003. The application claims a side puller accessory frame that is mounted on a car carrier or tow truck for pulling loads, such as disabled vehicles.

The Board affirmed the Examiner's rejection of claims 1, 2, 5-15, and 17 because an invoice, dated April 18, 2002, evinced a commercial sale of the invention more than a year before the priority date. The invoice did not indicate that the sale was for an experimental use. The Board also affirmed the Examiner's rejection of claims 3, 4, and 16 as obvious in light of the product sold in accordance with that invoice and U.S. Patent No. 5,845,664 ("the Ryder patent").

Ceccarelli appeals the Board's decision. This court

has jurisdiction under 28 U.S.C. § 1295(a).

## II

The Patent Act bars issuance of a patent if the application is filed more than one year after (1) the product was sold or offered for sale and (2) the invention is ready for patenting. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). A sale for experimental use negates the on-sale bar. *See Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1379 (Fed. Cir. 2010). This court reviews an "on sale" bar under 35 U.S.C. § 102(b) as a question of law based on underlying facts. *In re Kollar*, 286 F.3d 1326, 1329 (Fed. Cir. 2002). This court reviews the Board's legal conclusions without deference and factual findings for substantial evidence. *Id.*

According to Mr. Ceccarelli's first declaration ("First Declaration"), dated February 28, 2007, Mr. Ceccarelli told Mr. Lyndon Skogsberg in April 2002 that he needed a truck chassis to mount his invention "for experimental testing, development, and revision before [his] company could take commercial steps with the invention." J.A. 97. The First Declaration describes an agreement, memorialized in the April 18, 2002 invoice, in which Mr. Skogsberg would allow Mr. Ceccarelli to use a truck owned by Mr. Skogsberg's company to mount and test the invention. Mr. Ceccarelli's First Declaration explained that the agreement "was not an effort to commercialize the invention, but was rather necessary to advance the experimental development of the invention." J.A. 97.

Mr. Ceccarelli's second declaration ("Second Declaration"), dated June 14, 2007, is consistent with the First Declaration and supports the experimental nature of the sale. According to this declaration, at the time of the sale Mr. Ceccarelli had a general idea that required testing.

Mr. Skogsberg agreed to let him test his idea by mounting his side puller device on Mr. Skogsberg's truck.

The Board explains only that it considered the sale commercial because "[t]he April 18, 2002 invoice does not contain any indication that the sale was for experimental use." J.A. 13. Mr. Ceccarelli's First and Second Declarations, however, provide ample evidence that the sale was experimental, not commercial, in nature. Because the Board's finding that the sale was not for experimental use lacks substantial evidence, this court reverses the Board's decision affirming the Examiner's rejection of claims 1, 2, 5-15, and 17 under 35 U.S.C. § 102(b). Because the sale was for experimental use, the product sold is not prior art. *See Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1344 (Fed. Cir. 2007). Therefore, this court reverses the Board's decision affirming the Examiner's rejection of claims 3, 4, and 16 under 35 U.S.C. § 103(a) as obvious in light of the product sold and the Ryder patent.

The dissent suggests that if an inventor perfects an invention between the date of a sale and the critical date, then the sale is commercial. The character of a sale, however, is determined "at the time of the sale." *Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Motors Corp.*, 417 F.3d 1203, 1210 (Fed. Cir. 2005) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1354 (Fed. Cir. 2002)). If a sale is experimental on the date of the sale, then reducing the invention to practice before the critical date is irrelevant—it does not change the character of the sale.

The dissent states that if Ceccarelli had delivered the invention between the date of reduction to practice and the critical date, then "there would be no dispute that this constituted an on-sale bar." Although a sale following a reduction to practice is necessarily commercial, *Zacharin*

*v. United States*, 213 F.3d 1366, 1369 (Fed. Cir. 2000), the order in which reduction to practice, delivery, and the critical date occur does not dictate whether a sale preceding a reduction to practice is commercial or experimental. *See Electromotive*, 417 F.3d at 1209-10.

> The question posed by the experimental use doctrine . . . is not whether the invention was under development, subject to testing, or otherwise still in its experimental stage at the time of the asserted sale. Instead, the question is whether the transaction constituting the sale was not incidental to the primary purpose of experimentation, i.e., whether the primary purpose of the inventor at the time of the sale, as determined from an objective evaluation of the facts surrounding the transaction, was to conduct experimentation.

*Id.* at 1210 (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1354 (Fed. Cir. 2002)). Thus, a sale followed by reduction to practice, then delivery, and finally the critical date does not create a per se commercial sale.

## III

Accordingly, this court reverses the Board's decision affirming the Examiner's rejection of claims 1 through 17.

## REVERSED

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

(Serial No. 10/843,833)

**IN RE CHARLES CECCARELLI, STEVEN DELAPLAIN, AND AARON MARTIN**

---

2010-1054

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

MOORE, *Circuit Judge*, dissenting.

Respectfully, I dissent. The following facts are undisputed: 1) the critical date is May 15, 2002; 2) there was an offer to sell to Country Repairs on April 18, 2002 and an acceptance of that offer; 3) The invention was reduced to practice by May 14, 2002; 4) the invention was shown in public on May 15, 2002; 5) the invention was delivered to Country Repair, pursuant to the April 18 invoice, on May 23, 2002.

Based upon these facts, I conclude the on-sale bar applies. Once an invention is reduced to practice, *there is no further need for experimentation.* Here, the inventor admits that his invention was reduced to practice at least as early as May 14, 2002. See J.A. 294. Reduction to practice means an invention has been physically built and

is known to work for its intended purpose. *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1265 (Fed. Cir. 2002). The invention in this case was both offered for sale and reduced to practice prior to the critical date. Once the invention in this case was reduced to practice, which it was prior the critical date and prior to its delivery to Country Repairs, Country Repairs could not be experimenting on it. The completed invention was delivered to them ready for use – by the inventor's own testimony – no further experimentation was necessary after May 14, 2002. In my opinion, that makes this sale commercial, not experimental in nature. Certainly when an inventor sells a product to a buyer in order for the buyer to experiment with it, this sale is experimental, and will not bar patentability. *See EZ Dock v. Schafer Sys.*, 276 F.3d 1347, 1352-53 (Fed. Cir. 2002). However, when an inventor offers to sell an invention, which is not yet reduced to practice, and then reduces it to practice, and delivers it pursuant to the contract, all prior to the critical date – this sale creates a bar to patentability. In this case, the sale has no experimental purpose. The buyer is not conducting experimentation for the patentee – there is no experimentation to be done – the invention is reduced to practice.

Whether a use is experimental is a question of fact. *See Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1258 (Fed. Cir. 2001). I conclude that the PTO factfindings are supported by substantial evidence. There was a contract on April 18. Even if I agreed with the majority, that there was a need for additional experimentation at the time the invoice was generated, the inventor, by his own admission, did that experimentation and perfected the invention prior to the critical date. Hence, there is a sale of a perfected invention prior to the critical date – that is sufficient to bar patentability. There is no

dispute that the tow truck and side puller system were reduced to practice by May 14, shown May 15, and delivered pursuant to the invoice to Country Repairs on May 23.  If this delivery had occurred on May 14, after the reduction to practice and one day before the critical date, there would be no dispute that this constituted an on-sale bar.  I cannot agree that this delay in delivery leads to the conclusion that the sale was for purposes of experimentation.  To the contrary, I believe the facts in this case, including the invoice, acceptance, and reduction to practice, support the PTO's finding that the sale was commercial in nature and should bar patentability under § 102(b).  Because I conclude the PTO fact findings in this case are supported by substantial evidence, I would affirm.